**Mrs. Margaret McCULLOUGH et al., Plaintiffs-Appellants,**

v.

**BEECH AIRCRAFT CORPORATION et al., Defendants-Appellees.**

No. 75–3038.

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1979.

Rehearing Denied Feb. 20, 1979.

Thomas L. Stennis, II, Gulfport, Miss., Tanner & Jahn, Richard P. Jahn, Chattanooga, Tenn., for plaintiffs-appellants.

W. Scott Welch, III, Jackson, Miss., for Cont. Motors Corp.

William E. Suddath, Jr., Jackson, Miss., for Beech Aircraft.

Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.

VANCE, Circuit Judge.

Stanley H. McCullough, an experienced military pilot active in the army reserve, was killed when the aircraft he was flying crashed near Camp Shelby, Mississippi on March 31, 1967.[1] Colonel McCullough's widow and children brought suit for his wrongful death against Beech Aircraft (Beech), the manufacturer and original seller of the aircraft, and Continental Motors Corporation (Continental), the manufacturer of the engine and related parts. The case was tried before a jury in May 1975. At the close of plaintiffs' proof, the district court granted a directed verdict in favor of Continental. The question of Beech's liabil-

---

1. McCullough had 1922 hours of flight experience with 11 hours in this particular aircraft.

ity was submitted to the jury, which returned a verdict for Beech. On appeal, appellants seek a new trial as to both Beech and Continental alleging that the district court erred in granting a motion for directed verdict in favor of Continental and that the instructions to the jury were so erroneous as to require a new trial with regard to Beech.

The aircraft in which Colonel McCullough died was a single engine general aviation aircraft known as a Musketeer Model A23A. It was owned by Chattanooga Aviation, Inc. but, at the time of the fatal crash, was rented to the United States Government for use by U. S. Army reservists. Colonel McCullough was flying the airplane to the National Guard Camp at Camp Shelby when he crashed.

The circumstances surrounding the crash were established primarily by circumstantial evidence. No one saw the accident or survived the crash. Four Mississippi National Guard employees at Camp Shelby, however, observed the plane flying overhead immediately before it crashed and testified that the engine was running erratically, sputtering and cutting in and out.

An on site investigation of the crash was conducted by the Federal Aviation Administration (FAA), and various components of the Musketeer aircraft were inspected by army examiners. The investigation established that, at the time of impact, the left fuel tank was virtually full of fuel but the right tank was empty.[2] The fuel selector valve was positioned on the right tank. The fuel pressure gauge read zero, which would indicate that no fuel was being pumped to the engine. The army examiners concluded that "there was insufficient

fuel available to maintain proper engine operation requirements just prior to impact," and also found "no evidence of defects or conditions that could have caused engine malfunction" except insufficiency of fuel.

Appellants sought to establish that the proximate cause of the accident was an improperly designed fuel system that lacked adequate instructions on its use during an emergency. Appellants contend that they established a case against both Beech and Continental for negligent design, manufacture, and failure to warn; for breach of the implied warranty of fitness; and for strict liability in tort.[3]

The Musketeer Model A23A had two fuel tanks, each holding approximately thirty gallons of fuel. The pilot drew fuel from an individual tank by positioning the fuel selector valve on either the left or the right tank.[4] The fuel system was designed so that during normal flight more fuel was pumped from the selected tank than the engine consumed. Excess fuel from both tanks was circulated and returned only to the left tank regardless of the tank from which it originated.[5]

The Owners' Manual, which was furnished with the airplane by Beech, explained the fuel system as follows:

The fuel selector valve is located on the floor ahead of the trim and flap controls. Always bear in mind that the engine-driven fuel pump returns excess fuel to the left hand fuel tank. When both tanks are full, provide space for the returned fuel by using fuel from the left hand tank for the first 15 minutes before

2. In addition, the investigators, through the use of a technique involving black lights, found that the left fuel quantity gauge read approximately three-fourths at impact while the right fuel quantity gauge read empty.

3. The Supreme Court of Mississippi has adopted Restatement (Second) of Torts § 402A (1965). *Early-Gary, Inc. v. Walters,* 294 So.2d 181 (Miss.1974); *State Stove Mfg. Co. v. Hodges,* 189 So.2d 113 (Miss.1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967).

4. Appellants do not dispute that "Left" and "Right" were marked on the placard above the fuel selector valve.

5. For each 10 gallons of fuel used by the engine in an hour's time, 6 additional gallons were circulated and returned only to the left tank. The excess fuel was needed to maintain adequate pressure during stress periods; e. g., take off or emergency flight.

drawing fuel from the right hand tank. After that, use fuel from the fuller tank.[6] In Section II of the manual, Operation Check List, the pilot is instructed to "[u]se 15 gallons from the left tank first; thereafter, select fuller tank." The same instruction is contained in the Pilot's Check list that remained in the aircraft at all times:

BEFORE START CHECK

. . . . .

8. Set fuel selector valve. Use 15 gallons from left tank first; thereafter, select fuller tank.

The placard at the fuel selector valve also instructed the pilot to "USE 15 GAL FROM LEFT TANK FIRST."

*The Directed Verdict for Continental*

■■■ In deciding whether to grant a directed verdict, a court must consider all the evidence in the light and with all reasonable inferences most favorable to the party who opposes the motion. *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969). If the evidence is of "such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury." *Id.* at 374. Drawing all reasonable inferences in the light most favorable to the party opposed to the motion, we find that the directed verdict in favor of Continental was correctly granted. *Wansor v. George Hantscho Co.,* 570 F.2d 1202, 1207 (5th Cir. 1978); *Callon Petroleum Co. v. Big Chief Drilling Co.,* 548 F.2d 1174, 1176 (5th Cir. 1977).

■■■ Appellants contend that Continental is liable because it shared responsibility and prescribed adjustments for some components controlling the smooth operation of the engine. They proved primarily that conflicting versions of a Continental engine

manual were published[7] and that a service bulletin was issued approximately one year before the crash.

The Continental engine manual indicated that Continental did not make the decision to return excess fuel only to the left tank. The manual specified the rate of return, but the placement of the fuel return line was the responsibility of the aircraft's manufacturer. Although the manual in which the return rate was incorrectly described as three gallons per hour was not in evidence, testimony to that effect was before the jury. No evidence, however, showed that Colonel McCullough had seen either the accurate or the inaccurate manual, and certainly no evidence indicated that he was misled by the manuals. Appellants were required to produce more than this scintilla of evidence to justify submitting the question to the jury. *Boeing Co. v. Shipman, supra.*

The service bulletin on which appellants relied warned that

many instances of erratic idle and poor throttle acceleration response have been traced to maladjustment of the fuel metering system.

The bulletin recommended a five-step fuel injection system adjustment procedure to eliminate these difficulties. Continental sent the bulletin to all Continental aircraft parts distributors, dealers, engine owners, and repair agencies. Unlike the FAA airworthiness directives, also cited by appellants, that enumerated particular widespread defects and required them to be remedied within a specified period of time, the Continental service bulletin was distributed merely to assist persons inspecting and repairing engines. Appellants failed to demonstrate that the Musketeer flown by McCullough was subject to erratic idle and

6. Beech admits that this reference to 15 minutes should have been to 15 gallons.

7. The two versions of the manual disagreed on the rate which which excess fuel was returned from the engine. Only one manual, however, had been introduced into evidence when the

directed verdict was granted. It correctly stated that approximately six gallons of excess fuel were returned to the fuel tank per hour. Testimony indicated that the other version specified the return rate as three gallons per hour.

poor throttle acceleration response [8] or that these conditions contributed to the accident.

To establish a products liability case, a plaintiff must at least present evidence from which the jury can infer that when the defendant's product left its control it contained some sort of defect, which rendered it unreasonably dangerous, and that the defect was a substantial element in causing plaintiff's injury. *Price v. Admiral Corp.,* 527 F.2d 412 (5th Cir. 1976); *Ford Motor Co. v. Matthews,* 291 So.2d 169 (Miss. 1974). A defective product is one that "does not meet the reasonable expectations of the ordinary consumer as to its safety"; thus "if the seller knew of the condition he would be negligent in marketing the product." W. Prosser, *Law of Torts* § 99, at 659–60 (4th ed. 1971), *quoted in Ford Motor Co. v. Matthews, supra,* at 172. In this case, appellants have failed to show that the engine components supplied by Continental were defective in design or in manufacture when they left its control or that a defect in the components was a proximate cause of Colonel McCullough's injuries. Reasonable and fair-minded persons could conclude only that appellants did not establish Continental's liability. *Boeing Co. v. Shipman, supra.* The directed verdict in favor of Continental was properly granted.

*The Instruction as to Beech's Liability*

Appellants argue that the instructions given by the district court constitute a directed verdict in Beech's favor. Specifically, they claim that thirty different errors were committed by the district court.[9] Although we have considered every contention, we will discuss only the contentions that raise substantial questions.

Because the manner of giving jury instructions is a procedural matter rather than a substantive one, it is governed by federal, not state law. *Houston v. Herring,* 562 F.2d 347 (5th Cir. 1977); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). In examining a trial court's jury instructions, we consider the charge as a whole. A technical imperfection does not occasion reversal when it is part of a charge that otherwise adequately instructs the jury on the applicable law. *Shelak v. White Motor Co.,* 581 F.2d 1155 (5th Cir. 1978); *Coughlin v. Capitol Cement Co.,* 571 F.2d 290 (5th Cir. 1978); *Troutman v. Southern Railway,* 441 F.2d 586 (5th Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). We must determine "not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1100 (5th Cir. 1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). *Accord: Reyes v. Wyeth Laboratories, supra,* at 1289. If the charge as a whole "leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations" it cannot stand. *Kyzar v. Vale Do Ri Doce Navegacai, S. A.,* 464 F.2d 285, 290 (5th Cir. 1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973).

In this case, the district court's jury charge was contradictory and may well have caused the jurors to misunderstand the issues presented to them for resolution. To some degree appellants contributed to the confusing nature of the instructions by their shotgun approach involving an unnec-

---

8. James C. Bynum, repair station manager of Tennessee Airmotive, an FAA approved repair station where the plane was hangared, stated that he could not recall receiving any complaints concerning an idle problem.

9. Appellants assert that sixteen of the thirty claimed errors arose when the district court refused to include sixteen of appellants' requested instructions in his charge. Thirty pages of instructions were requested by appel- lants; twenty pages of these were refused. Because the instructions given by the district court covered the principles contained in the refused instructions and were less confusing to the jury than they would have been had the requested instructions been given, the district court did not err in refusing to give the instructions. *See Ullman v. Overnite Transp. Co.,* 563 F.2d 152 (5th Cir. 1977).

essary number of recovery theories. The question whether Beech negligently failed to warn was submitted to the jury and decided in Beech's favor. As we read the charges the court effectively removed the other issues from the jury's consideration.

 Appellants claim that the district court erred in charging the jury that "there was no breach of any implied warranty by the defendant Beech," [10] because whether Beech breached its implied warranty of fitness was a jury question. Appellants urge that Mississippi law authorizes this contract theory of recovery because (1) *State Stove Manufacturing Co. v. Hodges*, 189 So.2d 113 (Miss.1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967), removed the privity requirement, (2) the Mississippi Uniform Commercial Code [11] does not require privity between an ultimate user and a remote manufacturer, and (3) the Mississippi wrongful death statute [12] specifically allows it. In *State Stove*, however, the Supreme Court of Mississippi reasoned, "In the absence of privity, the liability is in tort and not in contract, and a concept of warranty from the contract law of sales is irrelevant." 189 So.2d at 119. The warranty provisions [13] in the Mississippi Uniform Commercial Code did not become effective until March 31, 1968, exactly one year after Colonel McCullough died; therefore, this case is not governed by its standards. *Denman v. Armour Pharmaceutical Co.*, 322 F.Supp. 1370, 1374 (N.D.Miss.1970). In the following situations the Mississippi wrongful death act permits a survivor to bring an action that could have been brought by the decedent had he or she lived:

> Whenever the death of any person shall be caused by any real, wrongful or negligent act or omission, or by . . . unsafe machinery, way or appliances . . , or whenever the death of any person shall be caused by the breach of any warranty, express or implied, of the purity or fitness *of any foods, drugs, medicines, beverages, tobacco or any and all other articles or commodities intended for human consumption* . . . .

Section 11–7–13 of the Mississippi Code Annotated (Cum.Supp.1978) (emphasis added). Because this statute changed the common law, it must be strictly construed and has not been held to authorize claims like that of appellants. *See Howard v. Sears, Roebuck & Co.*, 437 F.Supp. 883 (S.D.Miss.1977); *Smith v. Garrett*, 287 So.2d 258 (Miss.1973); *Hasson Grocery Co. v. Cook*, 196 Miss. 462, 17 So.2d 791 (1944). The questions whether privity is required in this warranty action and whether recovery is allowed in this situation under the Mississippi wrongful death act are not unambiguously answered in Mississippi law. We conclude, nonetheless, that the warranty theory was correctly withdrawn from the jury's consideration. *See generally Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir. 1975).

 The district judge charged the jury, "I don't think there was any fault in the design of this plane." [14] This instruction constituted a directed verdict for Beech because it removed the question, whether

---

10. In another part of its charge the district court also instructed,

> [S]hould you believe from a preponderance of the evidence in this case . . . that Colonel McCullough's negligence, if any, was induced by the defendant through . . . breach of implied warranty . . . then . . . you cannot find Colonel McCullough was guilty of any contributory negligence which you find from a preponderance of the evidence was induced by the defendant as set out above.

11. Miss.Code Ann. § 75–2–314 n. 8 (1972).

12. Miss.Code Ann. § 11–7–13 (Cum.Supp. 1978).

13. Miss.Code Ann. § 75–2–313 *et seq.* (1972).

14. He continued,

> I don't think there's anything wrong with the physical makeup of the plane. The only question I think that the jury need to concern itself with is whether or not the defendant in this case reasonably warned this pilot of any latent or hidden peculiarities of this plane which were reasonably foreseeable as I stated in the outset to the jury and I don't back off from what I stated initially as being really the crux of what you're to consider here.

Beech was strictly liable for defectively designing the aircraft, from the jury's consideration. In a federal trial, the judge has the right to comment on the evidence, so long as he does not comment on ultimate factual issues to be decided. *Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); *Travelers Insurance Co. v. Ryan,* 416 F.2d 362 (5th Cir. 1969). At the conclusion of his charge the trial judge in this case told the jury that he did not comment on the evidence but that he was the sole judge of the law. Thus, the jury would have considered his assertion that the Musketeer contained no design defects not merely an impermissible comment on an ultimate fact in issue but a legal ruling that they were required to follow. We find that strict liability was a jury issue. The effect of the district court's instruction was to withdraw the issue from the jury and in this he committed reversible error.

■ At trial, appellants produced two witnesses who were aviation experts, William K. Kershner and Frederick Timothy Palmer. Both experts considered the fuel return system unique. They testified that they knew of no other aircraft of this type in which fuel was returned only to the left tank. Mr. Palmer stated, "Here is the most illogical fuel system I have ever run into." When asked whether the Beech Musketeer had defects or dangers that proximately caused the accident, Mr. Kershner replied, "Yes, it did." Mr. Palmer elaborated,

My conclusion [is] that the causation of this accident was the improper design of the fuel system, it was so unusual that the system was not properly explained . . . . [T]he boost pump was a contributing factor in that it had a bad effect on the throttle, that the uncertainty caused by the statement in the checklist could contribute to uncertainty in the pilot's actions should he get into a situation where he would normally expect to use the boost pump such as engine failure, and that this uncertainty by itself can induce panic, and if there is any pilot error involved in this particular accident in my opinion it is induced by improper design of this airplane.

Mr. Palmer also testified that the throttle and boost pump were not convenient and did not operate smoothly, that the fuel gauges were unusual, and that fuel was drawn improperly from both tanks when the fuel selector was midway between the right and the left tank positions. Although most airplanes restart in two seconds, the Musketeer, Mr. Palmer stated, required eight to ten seconds and "possibly could not be restarted within ten seconds by a pilot who was unsure of the controls."

On the basis of the testimony given by appellants' two expert witnesses, reasonable persons could infer that the Beech Musketeer was defectively designed and that the design defect was a substantial element in causing Colonel McCullough's death. Appellants thus sufficiently established their strict liability claim against Beech. Because there is a conflict in substantial evidence on whether the Musketeer was defectively designed, a jury question was created, and a directed verdict was improper. *Boeing Co. v. Shipman, supra.*

■ Appellants also contend that the district court misstated the evidence in its instructions. The court charged the jury that 63 seconds elapsed between the time Colonel McCullough cancelled his flight plan at Hattiesburg and the time he crashed near Camp Shelby. The testimony shows, however, that 63 second was the period between the time the engine began sputtering above a water tank approximately 7,000 feet from the crash site and the crash itself. The trial judge declined to correct this misstatement even after defense counsel agreed with plaintiffs' contention. The trial judge then told the jury that the Musketeer had been placed in a stall voluntarily before it crashed although no direct evidence showed the stall to have been voluntarily entered. Both of these factual instructions were erroneous. In the light of the trial judge's subsequent statement that he instructed the jury on the law but did not comment on the evidence, his factual misstatements, like his comment on the absence of a design defect, were given

binding effect. With respect to the issue of causation, appellants' case was based entirely on circumstantial evidence that included complicated time and distance calculations as well as expert opinions on the probable actions of the persons in the aircraft. The court's mistaken assertions virtually destroyed appellants' circumstantial case. With respect to the single theory of liability which was submitted to the jury, these inaccuracies caused the charge as a whole to be so misleading as to compel reversal. *See Kyzar v. Vale Do Ri Doce Navegacai, S. A., supra.*

We therefore reverse and remand the case to the district court for a new trial as to Beech only on the issues of strict liability and negligent failure to warn.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.