Evelyn JACKSON, Plaintiff-Appellant,

v.

SEARS, ROEBUCK AND COMPANY,
Defendant-Appellee.

No. 80–7422.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 15, 1981.

Robert H. Stroup, Atlanta, Ga., for plaintiff-appellant.

Alston, Miller & Gaines, Anne S. Rampacek, Leah Sears-Collins, Atlanta, Ga., for defendant-appellee.

Before FAY and VANCE, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

Appellant seeks this court's reversal of the jury verdict entered in favor of appellee, Sears, Roebuck and Company (Sears) on her Age Discrimination in Employment Act (ADEA) claim. Appellant also challenges the district court's dismissal of her Employee Retirement Income Security Act (ERISA) claim. We affirm both the dismissal of appellant's ERISA claim and the judgment entered by the district court on her ADEA claim.

For more than twenty years appellant was employed by Sears, and for the last three years of her employment she worked

---

* District Judge of the Northern District of Alabama, sitting by designation.

as a catalog sales representative in the Newnan, Georgia store, and was compensated in part by salary and part on commission. Appellant was the "Home Appliance" catalog sales representative, and as such was responsible for promoting, selling and keeping informed about "big ticket" merchandise such as washing machines, dishwashers, window air conditioners and similar merchandise which could be delivered and installed without the services of an independent contractor. On the sale of such merchandise, appellant was eligible to earn a commission; as to all other merchandise, appellant was expected to assist in selling, or refer the customer to another salesperson with more knowledge of that particular merchandise, but no commission on those sales could be claimed by appellant.

Gene Chester was the second catalog sales representative in the Newnan store. Mr. Chester was the "Installed Home Improvement" salesman, and was responsible for central air conditioning, fencing and similar items installed for Sears by independent contractors. On the sale of such installed items, only Mr. Chester could earn a commission; however, he, like appellant, was to assist in the sale of all other merchandise on which no commission could be earned.

In order to be eligible for commission on a sale the salesperson must have had personal contact with the customer in effectuating the sale. This policy is not in dispute; however, the parties are in disagreement as to what satisfies the personal sale requirement.

On November 4, 1977, Jimmy Mann, the Newnan store manager, handled a customer complaint regarding installation of carpet sold by Mr. Chester. Also present was Glenn Collins, District Manager, who was in the Newnan store on a routine visit. The customer mentioned a washing machine he bought from Chester while Chester was in his home on the carpet sale. In checking on the washing machine sale, Mr. Mann noted that appellant had claimed the commission. The customer was then contacted and he informed Mann and Collins that he had not made any contact with appellant concerning the washing machine. Because Mann, as store manager, approved all sales when finalized, he had knowledge of a sale of a built-in oven which also involved appellant and Mr. Chester. In examining this sale, Mann and Collins learned that the customer dealt only with appellant, and yet the commission had been claimed by Chester.

In effect at all relevant times was an unwritten rule prohibiting employees from pooling, splitting, or swapping sales in order to receive a commission on a sale other than a personal sale. Because the sale of the washing machine involved personal contact by Chester and the allegedly unauthorized claiming of commission by appellant, and the reverse in the sale of the built-in oven, both Chester and appellant were confronted by Mann and Collins with violation of the "no swap" rule. Both employees conceded that they were aware of the company policy prohibiting the swapping of sales.[1]

On November 11, 1977, one week after Chester and appellant were confronted with

---

1. When confronted by Mann and Collins with the alleged rule violation (and at trial), appellant attempted to explain the background of the two sales in question. As to the washing machine sale, appellant stated that Mr. Chester was in the customer's home working on the carpet sale when the customer inquired as to washing machines. Chester then telephoned appellant at the store and asked her to give him the price on Sears' best washer. Appellant stated that when Chester returned to the store he instructed her to go ahead and write up the washing machine sale, which she did.

As to the sale of the built-in oven, appellant stated that the customer approached her in the store and wanted to buy a built-in range. Appellant stated that she took the customer's name and account number on an order pad, and informed the customer that Mr. Chester would contact her because appellant could not give her the price of the installation on the range.

Appellant denied that these actions constituted swapping sales; that she and Chester were only "helping each other" and that she "didn't know it was wrong." Further, appellant denied knowing that the personal contact requirement meant "face to face" contact with the customer. According to appellant, preparing the "legwork" or paperwork on a sale, even if prepared after the completion of the sale, was sufficient personal contact to justify claiming the commission.

the alleged violation, both employees signed written statements prepared by Sears summarizing the facts of the two sales in question. Each employee was then given the option of resigning or being terminated; Mr. Chester chose to resign, but appellant, refusing to resign, was terminated. At that time, appellant was forty-three years old, and Chester was thirty-seven.

At all times during her employment with Sears, appellant was a timecard, or hourly, employee. At the time of appellant's discharge, the only retirement program at Sears in which timecard employees were eligible to participate was the "Savings and Profit Sharing Fund" which had been established in 1916. Also in effect at the time of appellant's discharge was a "Supplemental Pension Plan" which was established in 1944. The pension plan, however, did not cover timecard employees, and this fact is conceded by appellant. In March of 1977, prior to appellant's termination, an amendment to the pension plan was announced which would extend coverage for the first time to timecard employees. The effective date of the amendment was January 1, 1978.

On March 30, 1979, appellant filed suit against Sears alleging that Sears had violated both the ADEA and ERISA when it willfully terminated her at age forty-three after more than twenty years of employment, and within one and one-half months of receiving vested rights to pension benefits (pursuant to the implementation of the pension plan amendment). The complaint further alleged that appellant's work evaluations had always been satisfactory; that she had never received a reprimand; and that she was willfully replaced by a younger employee under the age of thirty. Sears filed an answer denying appellant's allegations, and on January 4, 1980, filed a motion to dismiss the ERISA claim and a motion for summary judgment on the ADEA claim.

By order dated February 15, 1980, the district court granted Sears' motion to dismiss the ERISA claim. The court found that appellant was not a "participant" within the statutory definition of the Act. The

motion for summary judgment on the ADEA claim, however, was denied by the court in the same order.

On February 25–27, 1980, the ADEA claim was tried to a jury resulting in a defendant's verdict for Sears. Judgment was entered in favor of Sears on February 27, 1980. Thereafter, appellant timely filed a motion for a new trial which was denied by order dated May 2, 1980. This appeal followed.

On appeal, several issues have been raised by appellant: (1) whether the district court erred in dismissing appellant's ERISA claim; (2) whether the court's charge to the jury was defective; and (3) what standard of "willfulness" should be applied to 29 U.S.C. § 626(b) regarding the recovery of liquidated damages under the ADEA.

## I. THE ERISA CLAIM.

Appellant argues that the district court erred in determining that she was not a "participant" within the meaning of ERISA. Under the Act, only a "participant" or a "beneficiary" or a "fiduciary" of an employee benefit plan may bring a private civil action. 29 U.S.C. § 1132. The term "participant" is defined in 29 U.S.C. § 1002(7) as follows:

... [A]ny employee or former employee of an employer, ... who is or *may become eligible* to receive a benefit of any type from an employee benefit plan which covers employees of such employer ....

*Id.* [emphasis added.]

Appellant concedes that she was not covered by the pension plan in effect at the time of her termination; however, she was a participant of Sears' Savings and Profit Sharing Fund (and following her discharge received all monies due her under such fund). Appellant argues that the pension plan and profit sharing plan constitute a single retirement program, and that because appellant was a participant in the profit sharing plan, she would have been eligible to receive benefits under the pension plan on the effective date of the pen-

sion plan amendment "but for" her termination. Appellant leans heavily on the "may become eligible" language in the definition of "participant" at 29 U.S.C. § 1002(7).

Sears submits that the pension plan and profit sharing fund are separate plans. Further, Sears argues that in order for appellant to be a participant in the pension plan she must first have been covered by such plan, and must also have satisfied the age and length of service participation requirements under the plan. Because the pension plan in effect at the time of appellant's discharge did not cover timecard employees, Sears urges that there can be no question but that appellant, as a timecard employee, was not covered and could not be a participant in the pension plan. We agree.

We find that at the time of appellant's termination, Sears' pension plan and profit sharing fund were separate and distinct plans. Such a finding is not inconsistent with 29 U.S.C. § 1002(2) of the Act which states:

The terms "employee pension benefit plan" and "pension plan" mean any *plan, fund,* or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(A) provides retirement income to employees, or

(B) results in a deferral of income

. . . .

*Id.* [emphasis added.] We find further support for the proposition that an employer may maintain more than one plan in 29 U.S.C. § 1058 of the Act which contemplates mergers and consolidations of plans by an employer.

In *Nugent v. Jesuit High School*, 625 F.2d 1285 (5th Cir. 1980), we discussed the issue of whether a former employee whose pension benefits were not vested at the time of her termination was a "participant" within the meaning of ERISA. We concluded that she was not. In *Nugent*, the plaintiff had been a teacher for Jesuit High School for three years. Since she was over twenty-five years old, Nugent qualified as a participant in the school's pension plan. However, at the time of her termination, Nugent had not completed five years of service as required by the pension plan. In determining that Nugent was not a participant, we stated:

It is plain that any current employee who meets the minimum participation standards "may become eligible to receive a benefit" even though the employee has not acquired enough tenure for his or her benefits to vest. By remaining on the job, the employee will eventually become vested. Thus that current employee is always a "participant." The former employee who is terminated after having acquired vested benefits is also a "participant:" at retirement, the vested benefits are actually paid . . . .

In contrast, the former employee without vested benefits will not receive benefits at retirement unless subsequently rehired by the employer ... Because of the rehire possibility, Nugent argues that she falls within the statutory language of a "former employee" who "may become eligible to receive a benefit."

Nugent's argument has some force because a present employee without vested benefits is nonetheless a "participant:" the employee's continued employment will cause the benefits to vest. Similarly, the employer's decision to rehire a former employee—as compared to retaining a present employee—will cause the employee's benefits to vest after appropriate continued employment. Nugent therefore presents a good argument that the statutory language can be read literally to make, in effect, all former employees over the age of 25 "participants."

We are convinced, however, that Congress did not intend such a reading. *We believe that the "may become eligible" language was intended to apply only to current employees.*

625 F.2d at 1287. [emphasis added.]

In the instant case, the facts for finding appellant a nonparticipant are even strong-

er than in *Nugent.* Unlike the plaintiff in *Nugent,* appellant was clearly not eligible for participation in the pension plan inasmuch as she was a timecard employee, and the pension plan did not cover timecard employees at the time of appellant's termination. We find that *Nugent* is dispositive of appellant's argument that she was within the "may become eligible" language of 29 U.S.C. § 1002(7). Accordingly, we hold that the district court properly dismissed appellant's ERISA claim.

## II. *THE ADEA CLAIM.*

At the trial, in attempting to make out a *prima facie* case of age discrimination, appellant testified that two salesmen in Sears' LaGrange, Georgia store were placed on "deficiency" for alleged sales swapping rather than being terminated or forced to resign as were she and Gene Chester. Appellant further testified that the two LaGrange salesmen had been placed on deficiency for sales swapping more than once, and that being placed on deficiency was the general disciplinary policy at Sears. Appellant also presented statistical evidence which indicated that while the number of older, longer-serviced employees in Sears' workforce declined during 1977, the year appellant was discharged, overall employment increased.

In rebuttal, Sears called Mr. Glenn Collins, the district manager who confronted appellant and Chester on November 4, 1977 with the alleged sales swapping, who testified that the information regarding the alleged sales swapping in LaGrange resulted from an internal audit, and that at the time the information was discovered, the sales swapping could not be verified to Collins' satisfaction. Hence, the salesmen were placed on deficiency rather than being terminated. However, Sears did present evidence that employees had been terminated for violation of the personal sale requirement in 1969, 1974 and 1976, and that sales swapping involved "dishonesty", a valid reason for termination.

The statistical evidence offered by appellant was admitted over Sears' objection inasmuch as the evidence included data regarding employees over the age of twenty-five rather than only employees aged forty and older (those protected by the ADEA). Sears further objected on the ground that the evidence also included employees hired for temporary purposes such as Christmas help and for "back to school" sales.

In *Texas Department of Community Affairs v. Burdine,* 450 U.S. ——, 101 S.Ct. 1089, 67 L.Ed. 207 (1981), the Supreme Court clarified the evidentiary burden placed upon the defendant in an employment discrimination suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Court stated:

In *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." Id. at 802 [93 S.Ct. at 1824]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id. at 804 [93 S.Ct. at 1825].

. . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff.

. . . .

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the prof-

fered reasons. [citation omitted.] It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted....[2]

The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. [citation omitted.] *Id.*

It is well settled that the analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable to ADEA cases. *See, Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014–1016 (1st Cir. 1979).

In the instant case, appellant does not argue that there is insufficient evidence to support the jury's verdict. Rather, she attacks the court's charge to the jury. In particular, appellant argues that the court erred in not tracking the language of *McDonnell-Douglas Corp. v. Green, supra,* and *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Further, appellant urges that the

court erred in not giving a charge based on *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), regarding how inferences of intentional discrimination can be drawn from evidence that the defendant deviated from its normal practice. Appellant also attacks the court's charge on pretext. Finally, appellant argues that the district court applied the incorrect standard of willfulness to 29 U.S.C. § 626(b) regarding the recovery of liquidated damages under the ADEA. 29 U.S.C. § 626(b) provides for the recovery of liquidated damages where the defendant has willfully discriminated against the plaintiff. Because the jury determined that Sears had not discriminated against appellant, we need not, and expressly decline to, determine which standard of willfulness applies to § 626(b).

In *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978), *later app.*, 636 F.2d 1069 (5th Cir. 1981), we held:

> It is settled law that, "In reviewing the trial court's instructions to the jury, we must consider the charge as a whole, in connection with the contentions made by the parties in the trial court, and from the standpoint of the jury. If the charge in general correctly instructs, then even though a portion is technically imperfect, no harmful error is committed." *Troutman v. Southern Railway Co.*, 441 F.2d 586, 590 (5th Cir. 1971) and cases cited therein.

*Id.* at 1161. And in *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754 (5th Cir. 1979) we stated:

> ... In examining a trial court's jury instructions, we consider the charge as a whole. A technical imperfection does not occasion reversal when it is part of a charge that otherwise adequately instructs the jury on the applicable law. [citations omitted.] We must determine

---

**2.** In a footnote, the Court stated that once the presumption raised by the plaintiff's *prima facie* case is rebutted, the initial evidence presented by the plaintiff and inferences properly drawn therefrom may still be considered by the trier of fact on the issue of whether the defendant's proffered explanation is pretextual. The Court went on to say that there may be cases where the plaintiff's initial evidence, when combined with effective cross-examination of the defendant, would suffice to discredit the defendant's explanation.

"not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." [citations omitted.]

*Id.* at 759. We have thoroughly examined the court's charge to the jury, and applying the test set out above, we find that the court's charge, when read as a whole, was proper.

### III. *CONCLUSION*

Because we find that appellant was not a participant within the statutory meaning of ERISA, and because we find no error in the court's charge to the jury on the ADEA claim, we affirm the district court's dismissal of appellant's ERISA claim and the entry of judgment in favor of Sears on the ADEA claim.

AFFIRMED.