853 F.2d 1372
 26 Fed. R. Evid. Serv. 423
 Terry VAUGHN, Plaintiff-Appellee, Cross-Appellant,
v.
Henry WILLIS, Defendant-Appellant, Cross-Appellee,
and
Richard DeRobertis, Chief Administrative Officer (Warden),
Stateville Correctional Center, Salvadore Godinez, Assistant
Warden for Programs, Stateville Correctional Center, Michael
O'Leary, Assistant Warden for Operations, Stateville
Correctional Center, and Travis Wheaton, Cellhouse
Superintendant, Stateville Correctional Center, Defendants,
Cross-Appellees.
 Nos. 87-1698, 87-1762.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 20, 1988.
Decided July 22, 1988.
 
 Bret A. Rappaport, Asst. Atty. Gen., Chicago, Ill., for defendant-appellant, cross-appellee.
 Gail A. Niemann, Jenner & Block, Chicago, Ill., for plaintiff-appellee, cross-appellant.
 Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 The defendant-appellant, Henry Willis, a guard at the Stateville Correctional Center (Stateville) in Joliet, Illinois, seeks review of a jury verdict in the amount of $125,000 for the plaintiff-appellee, Terry Vaughn, an inmate at Stateville. In April 1983, several other Stateville inmates brutally raped Mr. Vaughn. It was alleged that Mr. Willis affirmatively aided and abetted these prisoners in their assault. Mr. Vaughn's complaint alleged a deprivation of his federal civil rights, as well as injury under Illinois negligence law. An independent claim against various Stateville supervisors was dismissed at trial on a motion for directed verdict. On appeal, Mr. Willis raised two issues. First, he contends that the trial judge's instruction in directing a verdict in favor of the supervisory defendants substantially prejudiced his own case. Second, he asserts that the trial judge erred in admitting an unavailable witness' deposition into evidence, and excluding a subsequent letter from the same witness that allegedly impeached the deposition. For the reasons set forth in the following opinion, we affirm the judgment of the district court.
 
 
 2
 * Background
 
 A. Facts
 
 3
 Prior to the incidents giving rise to this action, Mr. Vaughn had been incarcerated at Centralia Correctional Center (Centralia). He had been sentenced to seven and one-half years imprisonment for forging his separated wife's signature on a check to purchase gasoline for his automobile. After he had engaged in a fight with another prisoner at Centralia, the state transferred Mr. Vaughn to Stateville. Apparently, the other Centralia prisoner, a member of the Black Gangster Disciples gang, threatened Mr. Vaughn by stating that his "people" at Stateville would "deal[ ] with" him upon his transfer. Tr. at 65. Mr. Vaughn interpreted this threat to mean "[t]hat I would be stabbed or assaulted." Id. at 66. Fearing for his safety, Mr. Vaughn informed a lieutenant at Stateville about the threat and asked to be placed in protective custody. The prison official granted his request. However, shortly after being transferred to the protective unit on April 2, 1983, Mr. Vaughn was raped and otherwise sexually abused by four inmate-members of the "Mickey Cobras street gang." R.1 (complaint at 5). Mr. Vaughn testified, over Mr. Willis' denial, that Mr. Willis forced him into a cell where two inmates raped him. Mr. Willis then returned Mr. Vaughn to his own cell and allowed two other inmates to rape him. A subsequent medical examination confirmed that Mr. Vaughn had been sodomized.
 
 B. Procedural Posture
 
 4
 Mr. Vaughn commenced this action by filing a pro se complaint. He alleged, pursuant to 42 U.S.C. Sec. 1983, a violation of his rights under the eighth and fourteenth amendments. In his second amended complaint, the operative pleading at this stage of the litigation, Mr. Vaughn alleged that Mr. Willis had violated his federal constitutional rights by "intentionally or recklessly ... exposing [him] to four sexual assaults in one day." R.39 at 6. He further alleged that Richard DeRobertis, the warden at Stateville, and several supervisors deliberately failed to protect him from sexual assaults at Stateville. In a second count, Mr. Vaughn alleged that Mr. Willis caused him injury under Illinois negligence law. He sought one million dollars in compensatory damages plus reasonable attorneys' fees.
 
 
 5
 A jury trial followed. At the close of Mr. Vaughn's case, all of the defendants moved for a directed verdict on the section 1983 claim. Mr. Willis also moved for a directed verdict on the state law negligence claim. The district court reserved judgment on the motion concerning the federal claim until after Mr. Willis testified. Ultimately, on January 29, 1987, the court granted the four supervisory defendants' motion for a directed verdict on the section 1983 claim. At the same time, the district court granted Mr. Willis' motion for a directed verdict on the pendent state law claim. Accordingly, the only claim that survived was the section 1983 claim against Mr. Willis.
 
 
 6
 At the close of all evidence, the jury returned its verdict in favor of Mr. Vaughn and against Mr. Willis in the amount of $125,000. On January 30, 1987, the district court entered judgment on the jury's verdict. Mr. Willis then filed a motion for a new trial. He contended that the district court's remarks to the jury explaining the directed verdict on the federal claim against the supervisory defendants were prejudicial to him. The district court denied the motion. Mr. Willis then filed a timely notice of appeal. Subsequently, Mr. Vaughn filed a notice of cross-appeal. On cross-appeal, Mr. Vaughn raises two issues in the event that we reverse the judgment and remand for a new trial. First, he contends, the trial judge erred in directing a verdict in favor of the supervisory defendants. Second, he asserts that the district judge erred in refusing to instruct the jury on the pendent state law negligence claim.
 
 II
 Discussion
 A. The Jury Instruction
 1. Contentions of the Parties
 
 7
 Mr. Willis contends that the district court abandoned its duty of impartiality when, in granting a directed verdict in favor of the supervisory defendants, it made the following statement to the jury:
 
 
 8
 I am entering judgment in favor of the supervisory defendants because there is no evidence sufficient to establish their liability that has been presented.
 
 
 9
 The evidence in the case indicates that certain precautions were customarily taken in regard to the custody of inmates and the protection of inmates from each other. There is no evidence that any of the supervisory defendants, for instance such as Mr. DeRobertis, the warden, or Mr. Godinez, the assistant warden, or Mr. O'Leary or Mr. Wheaton, did or failed to do anything that was a cause of the occurrence.
 
 
 10
 The plaintiff's evidence indicates, rather, that the occurrence was the result of a failure on the part of the defendant Willis to follow the established procedures; and there's no evidence from which you could find that the supervisory defendants had any reason to anticipate that Willis would not follow the established procedures.
 
 
 11
 So in short, the plaintiff's theory as to the supervisory defendants was, not that they were directly involved in the occurrences, but rather that they were deliberately indifferent to the danger that plaintiff might be sexually attacked. There is no evidence that they were deliberately indifferent to that danger, because there is no evidence that they were aware of that specific danger which in fact arose, if at all, only because of the unanticipated conduct of the Defendant Willis.
 
 
 12
 Tr. at 366-67 (emphasis supplied). Mr. Willis contends that these remarks substantially prejudiced the jury, and thereby deprived him of a fair trial. He also argues that this alleged error was not cured by the district court's cautionary instruction made immediately thereafter:
 
 
 13
 Now, I've gone on at some length to explain why I'm directing a verdict, as we say, in favor of the supervisory defendants.
 
 
 14
 I want to make it perfectly clear that I am not expressing any opinion whatsoever as to the liability of the Defendant Willis. All I'm saying is that there is evidence in the case which, if believed by you, would justify a verdict in favor of the plaintiff and against the Defendant Willis. There is no such evidence as to the other defendants, and that is the distinction.
 
 
 15
 Whether the plaintiff is entitled to recover against Willis is entirely a factual matter, resting largely upon the credibility of the witnesses. And that is entirely a matter for you to determine.
 
 
 16
 Id. at 367 (emphasis supplied).
 
 
 17
 In contrast, Mr. Vaughn characterizes this instruction as an explanation as to why the supervisory defendants no longer would be at the trial. He contends that the district court did not abuse its discretion in so advising the jury. Rather than constituting reversible error, Mr. Vaughn asserts that the district court should be commended for explaining to the jury exactly what the consequence was of granting the directed verdict. He also argues that the court properly cautioned the jury that it was expressing no opinion whatsoever as to the liability of Mr. Willis. Finally, Mr. Vaughn contends that, even if we do find that the district court committed error here, it was harmless.
 
 2. Analysis
 
 18
 a.
 
 
 19
 We review a challenge to a jury instruction "both in the context of the other instructions given and in light of the allegations of the complaint, opening and closing arguments and the evidence of record." General Leaseways v. National Truck Leasing Ass'n, 830 F.2d 716, 725 (7th Cir.1987); see United States v. Park, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912-13, 44 L.Ed.2d 489 (1975). This inquiry must be undertaken " 'in a common sense manner, avoiding fastidiousness, [and] inquiring whether the correct message was conveyed to the jury reasonably well.' " General Leaseways, 830 F.2d at 725 (quoting Wilk v. American Medical Ass'n, 719 F.2d 207, 218 (7th Cir.1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2398-99, 81 L.Ed.2d 355 (1984)). Mr. Willis ascribes error to the district court based only on the one isolated directed verdict instruction. However, we do not see that the instruction, read in the context of the entire trial, constituted error. The district court merely explained to the jury why the claim against the supervisory defendants no longer was before them. This is the favored practice in this circuit. United States v. Barrientos, 758 F.2d 1152, 1156 (7th Cir.1985), cert. denied, 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986); see United States v. Phillips, 640 F.2d 87, 91 (7th Cir.), cert. denied, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981).
 
 
 20
 A district court has some discretion to express an opinion to the jury, providing it makes clear that the resolution of all controverted issues of fact is left to the jury's discretion.[1] However, the court expressed no such opinion here. Rather, it informed the jury that, as a matter of law, based on the evidence introduced by Mr. Vaughn, the supervisory defendants could not be held liable under a reckless indifference claim.[2] Moreover, the court gave a contemporaneous cautionary instruction to emphasize that it had expressed no opinion concerning the liability of Mr. Willis. It further explicitly instructed the jury that they were the sole and ultimate factfinders concerning Mr. Willis' liability based on their assessment of the credibility of the witnesses. Furthermore, in charging the jury at the close of trial, the court also reiterated that, as the factfinder, it was within the jury's province alone to determine the liability of Mr. Willis. The court charged the jury that this determination must be done in the absence of sympathy or prejudice. Finally, the court stated that at no time during the trial did it mean to express any opinion concerning questions of fact or what the verdict should be.
 
 
 21
 b.
 
 
 22
 Even if we were to construe the district court's remarks as error, we would find them harmless. "In reviewing a claim of error in jury instructions, we will not find reversible error absent some effect on the substantial rights of the parties." General Leaseways, 830 F.2d at 725; see 18 U.S.C. Sec. 2111; National R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land, 766 F.2d 685, 688 (2d Cir.1985); Simmons, Inc. v. Pinkerton's, Inc., 762 F.2d 591, 597 (7th Cir.1985); Fed.R.Civ.P. 61; see also McDonough Power Equip. v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984). In other words, we must be "persuaded that the error was prejudicial." National R.R. Passenger, 766 F.2d at 688. The burden of showing prejudice rests with the party raising the error at issue. Moreover, our determination must be based on a review of the record as a whole. General Leaseways, 830 F.2d at 725; Connors v. McNulty, 697 F.2d 18, 21 (1st Cir.1983). On the record before us, we cannot construe the instruction, with its contemporaneous cautionary language, as evincing any undue prejudice against Mr. Willis. The district court, unlike the courts in the cases cited by Mr. Willis in his appellate brief,[3] did not undertake questioning of the witnesses, comment on counsel's competence, or otherwise inject its views into the trial in such a manner that it prejudiced--or otherwise affected--any substantial rights of Mr. Willis. We already have noted that the trial court's explanation concerning the directed verdict is the only instruction under attack.
 
 
 23
 Moreover, "where the evidence in support of the verdict is so overwhelming that the same verdict would necessarily be reached absent the error, or the error was cured by an instruction, a new trial would be mere waste and affirmance of the judgment is required." Weinar v. Rollform Inc., 744 F.2d 797, 808 (Fed.Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985). There was ample evidence of Mr. Willis' liability. Mr. Vaughn testified that he was raped by four other inmates and that Mr. Willis aided the assailants. This testimony was corroborated by the deposition of an eyewitness to the assaults. In support of the testimonial evidence, Mr. Vaughn introduced physical evidence in the form of a medical report, which indicated that he had suffered a tear in his rectum and that semen was present. Against this evidence, Mr. Willis presented only his own testimony that he knew nothing of the rapes and that he did nothing to aid them. Moreover, although he was the only guard in the protective custody section at the time of the assaults, he was unable to explain how the assaults had occurred absent a breakdown in prison procedure. Finally, as we already have noted, the district court issued a cautionary instruction contemporaneously with the challenged instruction, and it repeated the caution at the end of trial. Accordingly, assuming arguendo that any error was committed, it was harmless.
 
 B. The Evidentiary Challenges
 1. Underlying Facts
 
 24
 The testimony of Mr. Vaughn at trial was corroborated by the deposition of another inmate, Alvin Abrams. Mr. Abrams' deposition stated that Mr. Willis did assist the prisoners in raping Mr. Vaughn. Mr. Abrams' deposition also stated that, at the time of Mr. Vaughn's assaults, he was in a position to view Mr. Vaughn's cell. The deposition further explains that Mr. Willis unlocked Mr. Vaughn's cell door so that three inmates could enter and exit. In addition, Mr. Abrams' deposition also states that he witnessed the first assault. Although the deposition then indicates that Mr. Abrams did not actually witness the subsequent assaults, it reveals that, from the movement he could see, coupled with the pleas and protestations of Mr. Vaughn, Mr. Abrams was sure that Mr. Vaughn was being raped. The deposition finally states that Mr. Willis instructed Mr. Abrams to keep silent about the rapes and that if asked, to say that he saw nothing.
 
 
 25
 Prior to trial, Mr. Abrams wrote a letter to defense counsel in which he stated that he would not testify at trial and that he would not attest to the accuracy of his deposition. Thereafter, Mr. Abrams was notified that he could change certain mistakes in his deposition. He did so and again swore to the truthfulness of the deposition. Nevertheless, on the second day of the trial, Mr. Abrams explained to the district court, outside the presence of the jury, that he would not testify because he feared for his life as well as the lives of his family. The district court responded that, although it was sympathetic, the law did not recognize fear as an excuse not to testify. The court told Mr. Abrams that he had to testify or he would be held in contempt. After the court told him that he would spend an additional six months in prison for not testifying, Mr. Abrams replied, "I will take the six months, because my wife and my family are worth everything to me...." Tr. at 171. The district court then held that Mr. Abrams was unavailable as a witness. Because Mr. Abrams was unavailable as a witness, the court was faced with the dilemma of whether to admit the deposition and the subsequent letter to defense counsel. The district court ruled:
 
 
 26
 As between not having the benefit of [Mr. Abrams'] testimony at all or having the benefit of his deposition given under oath with the opportunity for examination by both sides, I believe that the preferable course is to allow the use of the deposition, and, as I say, I am going to deny the use of the impeaching letter because of the circumstances that presently confront us. The truth of that letter cannot be inquired into in the presence of this jury or otherwise at this point because the witness refuses to testify.
 
 
 27
 Id. at 178.
 
 2. Contentions of the Parties
 
 28
 Mr. Willis contends that the district court erred by admitting the deposition into evidence because there was no meaningful opportunity to cross-examine Mr. Abrams. He submits that Mr. Abrams' post-deposition conduct--which was not subject to cross-examination--impeached the testimony set forth in the deposition. He points both to the letter that Mr. Abrams sent to defense counsel, as well as to the minor changes made in the deposition.[4] Therefore, according to Mr. Willis, the deposition lacked the requisite "indicia of reliability" required for admissibility under Rule 804 of the Federal Rules of Evidence. However, in the event that the deposition properly was admitted into evidence, Mr. Willis contends that the letter also should have been admitted for purposes of impeachment under Rule 806 of the Federal Rules of Evidence. He argues that the deposition represents a prior inconsistent statement to the language contained in the letter to counsel. Finally, he contends that, by allowing only the deposition into evidence, the court committed reversible error by usurping the role of the jury in judging the credibility of Mr. Abrams.
 
 
 29
 In contrast, Mr. Vaughn contends that Mr. Abrams' deposition testimony met all the requirements of Rule 804 for admissibility. He submits that (1) the deposition was sworn, (2) Mr. Willis had an effective opportunity to cross-examine Mr. Abrams, and (3) Mr. Abrams' refusal to testify at trial indicates the reliability of his testimony; because the deposition testimony was true, Mr. Abrams was afraid that the inmates against whom he testified would retaliate against him--just as they had retaliated against Mr. Vaughn for fighting with a member of their gang at Centralia. Mr. Vaughn also contends that the district court properly refused to admit the letter because it was not probative for impeachment of the deposition evidence. He contends that the letter is inadmissible under Rule 806 because it is not inconsistent with the deposition. He then asserts that, under Rule 403 of the Federal Rules of Evidence, the district court properly excluded the letter because its probative value was substantially outweighed (1) by the danger of unfair prejudice, (2) by confusing the issues, and (3) by misleading the jury. Finally, Mr. Vaughn contends that, even if the district court erred in admitting the deposition testimony and/or erred in refusing to admit the letter, such error was harmless.
 
 3. Analysis
 
 30
 We turn first to whether Mr. Abrams' deposition was properly read to the jury. We conclude that the district court properly admitted this evidence. At the outset, we note that Mr. Willis, before this court, does not contest Mr. Abrams' "unavailability." Second, we note that the deposition fulfills all the criteria set forth in Rule 804(b)(1): (1) it was "taken in compliance with law in the course of the same ... proceeding"; and (2) Mr. Willis, through his attorney, had every "opportunity and similar motive to develop the testimony by ... cross ... examination." Fed.R.Evid. 804(b)(1). Indeed, Mr. Willis' attorney admitted that he had done almost all the questioning of Mr. Adams and that it had been extensive. Under these circumstances, we believe that the district court properly admitted the deposition testimony.
 
 
 31
 We also believe that the trial court was correct in refusing to admit Mr. Abrams' subsequent letter in which he declined to testify. Rule 806 provides in relevant part that "[w]hen a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." Fed.R.Evid. 806. A deposition, as a statement not made by the declarant while testifying at trial, is hearsay. See Fed.R.Evid. 801; see also Fed.R.Evid. 806 advisory committee's note. Accordingly, the letter is admissible as impeachment of the deposition only if it would have been admissible had Mr. Abrams testified. Had Mr. Abrams testified, the letter would have been admissible only if (1) it was relevant as impeachment of the deposition, see Fed.R.Evid. 402, and (2) its probative value as impeachment was not substantially outweighed by unfair prejudice, see Fed.R.Evid. 403.
 
 
 32
 We need not determine definitively whether the letter is relevant because it is abundantly clear that the district court acted well within its discretion in determining that the possibility of prejudice far outweighed any probative value the letter might have. After reading the letter and examining Mr. Abrams, the court advised counsel:
 
 
 33
 [I]n view of what the witness has said today, this letter would not be useful to the jury, and it would be unfair to the plaintiff to have this letter used as impeachment....
 
 
 34
 The witness Abrams has stood here and told me in effect that he would not submit to redirect examination concerning the contents of this letter. Now, the contents of the letter could mean anything. They certainly don't do more than throw a general cloud of dust into this situation. It would not enlighten the jury at all to read this letter. So the letter will not be received into evidence.
 
 
 35
 Tr. at 175 (emphasis supplied). Several factors support the determination of the trial judge. First, the letter itself is indeed very ambiguous:
 
 
 36
 I am not going assign this transcript against V. Willis and V. Terry. Two wrong don't make a right.
 
 
 37
 I am not going to testify in this case I made a lots of mistakes
 
 
 38
 I would like to see you person. Let me say this V. Terry don't have anything coming by law.
 
 
 39
 Appellant's App.D. Read in isolation, we cannot determine the letter's significance. Second, parts of the letter apparently deal with mistakes the witness made in the first version and had corrected at a later date. Therefore, the comments in the letter that "I made a lots of mistakes," and "V. Terry don't have anything coming by law," could be viewed by the jury in a manner highly prejudicial to Mr. Vaughn. Third, the trial judge, after thoroughly examining Mr. Abrams, determined that his refusal to testify was a product of fear for his safety and that of his family:
 
 
 40
 All right. Here is the impression of the Court. I believe that the likelihood is that the witness testified truthfully at his deposition. The only thing that has intervened that I heard about today is that he is fearful for his own safety and that of his family. He doesn't want to testify because he is scared to death of the people he is going to testify about. Consequently, because of that fear, he is now attempting to render his testimony unusable.
 
 
 41
 Tr. at 177-78. If he had permitted the jury to consider the letter, he also would have had to permit disclosure to them that the letter and the refusal to testify were a product of Mr. Abrams' fear for his safety and that of his family. The defendant had made it clear that it did not want such a disclosure made. Finally, we must remember that "[t]he trial judge, not the appellate judge, is in the best position to assess the extent of the prejudice caused a party by a piece of evidence. The appellate judge works with a cold record, whereas the trial judge is there in the courtroom." United States v. Long, 574 F.2d 761, 767 (3d Cir.), cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). Our examination of the record convinces us that the trial judge handled this most difficult situation with great care and that his decision was the product of thoughtful attention to the possibility of the jurors' drawing erroneous inferences from the letter. "When the district court has given such careful attention to a balancing of prejudice and probative value, we are particularly mindful of our duty not to reverse absent a clear abuse of discretion." United States v. Garner, 837 F.2d 1404, 1416 (7th Cir.1987); accord Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1268 (7th Cir.1988).
 
 C. The Claims on Cross-Appeal
 
 42
 On cross-appeal, Mr. Vaughn contends that the district court improperly granted a directed verdict in favor of the supervisory defendants. He also contends that the court improperly granted Mr. Willis a directed verdict on the pendent state law negligence claim. However, both before the district court and at oral argument, counsel for Mr. Vaughn represented that the cross-appeal only was a protective measure in the event that we reverse the district court and order a new trial. Counsel also represented that, in the event we affirm the judgment of the district court, Mr. Vaughn would not pursue the cross-appeal issues before this or any other court. See Appellant's Reply Br.App. at 7. Accordingly, because we affirm the decision of the district court, by Mr. Vaughn's own representations, we need not address the issues raised by the cross-appeal.
 
 
 43
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 698-99, 77 L.Ed. 1321 (1933); see Garnes v. Gulf & Western Mfg., 789 F.2d 637, 643 (8th Cir.1986); Seidman v. Fishburne-Hudgins Educ. Found., 724 F.2d 413, 417 (4th Cir.1984); Citizens State Bank v. Penn Cent. Transp. Co., 463 F.2d 611, 614 (7th Cir.1972)
 
 
 [2]
 The correctness of the district court's determination of law is raised by Mr. Vaughn in his cross-appeal. However, we decline to address the issue for the reasons set forth in section II C., infra
 
 
 [3]
 Mr. Willis makes the broad assertion that once a district court commits error in a jury instruction, the error cannot be cured by subsequent remedial statements. He relies on three cases to support his contention: McCullough v. Beech Aircraft Corp., 587 F.2d 754 (5th Cir.1979), Greener v. Green, 460 F.2d 1279 (3d Cir.1972), and Travelers Ins. Co. v. Ryan, 416 F.2d 362 (5th Cir.1969). However, none of these cases supports the broad assertion that, in all circumstances, an error in a jury instruction cannot be cured by subsequent remedial or cautionary instructions. Rather, the cases cited by Mr. Willis held only that, based on the facts in each case, a purported remedial statement did not cure an erroneous jury instruction. See, e.g., McCullough, 587 F.2d at 761 (purported remedial instruction exacerbated rather than cured effect of erroneous jury instruction); Greener, 460 F.2d at 1280-81 (ambiguous remedial remark made sometime after erroneous jury instruction did not cure "sufficiently prejudicial" instruction); Travelers Ins., 416 F.2d at 368 (remedial admonition "had a hollow ring" where district court was "grossly invasive of the jury's deliberations"). In contrast, and as already noted, we are presented here with a situation where the district court explained to the jury why certain of the defendants would no longer be at trial. With considerable care, the court explained the legal significance of the evidence as it pertained to all the defendants. Yet at the same time, the court cautioned the jury that it was stating no opinion and that the question of Mr. Willis' liability solely was a finding within the province of the jury. Unlike the cases cited by Mr. Willis, we cannot construe the district court's instruction as removing the ultimate factfinding on this issue from the jury to the court
 
 
 [4]
 The only change of any note in Mr. Abrams' deposition concerned the chronology of the assailants that entered into Mr. Vaughn's cell. However, the change consisted merely of reversing the order of the assaults committed by prisoner Posey Jones and prisoner Ronald "Two-Ton" Reno. Appellant's App.E. at 2