UNITED STATES of America,
Plaintiff-Appellee,

v.

**George Ted PHILLIPS,**
**Defendant-Appellant.**

No. 80–1185.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1980.

Decided Feb. 6, 1981.
Certiorari Denied May 18, 1981.
See 101 S.Ct. 2331.

---

Matthew J. Flynn, Milwaukee, Wis., for defendant-appellant.

Elizabeth L. Adelman, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT, CUMMINGS, and PELL, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant-appellant George Ted Phillips was convicted by a jury on December 20, 1979 of two counts of kidnapping in violation of 18 U.S.C. § 1201(a) [1] and § 2,[2] one count of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312 [3] and § 2, and one count of transporting a woman across state lines for immoral purposes in violation of 18 U.S.C. § 2421 (Mann Act) [4] and § 2. On January 16, 1980, defendant received two life sentences on the two kidnapping counts, a five-year sentence for transportation of a stolen motor vehicle, and a five-year sentence on the Mann Act charge, all to run consecutively.

Defendant appeals from that conviction, raising four issues for review: (1) did the district court err in denying defendant's motion for a mistrial based on acts and

**1.** 18 U.S.C. § 1201(a) (Supp. III 1979) provides:
Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, . . . when:
(1) the person is willfully transported in interstate or foreign commerce;

. . . . .

shall be punished by imprisonment for any term of years or for life.

**2.** 18 U.S.C. § 2 (1976) provides:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**3.** 18 U.S.C. § 2312 provides:

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

**4.** 18 U.S.C. § 2421 provides:
Whoever knowingly transports in interstate or foreign commerce or in the District of Columbia or in any Territory or Possession of the United States, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice . . . .
Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

statements of his codefendant; (2) was defendant denied effective assistance of counsel in violation of the Sixth Amendment; (3) did the district court err in overruling defendant's objections to the admission of certain evidence; and (4) did the district court err in imposing consecutive sentences. We affirm defendant's conviction.

I

The evidence presented at trial established the facts as follows. On August 23, 1979 at approximately midnight, Gary Smith and Robin Ramsay were sitting in Smith's car in the parking lot of a restaurant in Green Bay, Wisconsin when two men (defendant and Dennis Wieneke) approached the car pointing guns at Smith and Ramsay. The men ordered Smith and Ramsay into the back seat, and one hit Smith over the head with the butt of a gun. Wieneke and Phillips got into the front seat, and Phillips took Smith's wallet and Ramsay's purse. Wieneke drove around the corner where they picked up a third man, Joseph Clendenny, who sat on the back seat between Smith and Ramsay.

While heading south on Route 41, Phillips pointed a pistol at Smith and Ramsay, and played "Russian roulette" with Ramsay. At one point during the trip, they stopped near Slinger, Wisconsin and forced Smith into the trunk of the car. Ramsay was forced to disrobe and commit various sexual acts with Phillips, Wieneke, and Clendenny.

At approximately 7:00 a. m., they stopped the car in Illinois and helped Smith out of the trunk. The three men pushed Smith and Ramsay through a field, tied them to a tree, and then departed.

II

At trial, during the testimony of Robin Ramsay, codefendant Wieneke apparently made gestures [5] to his attorney, and the two

conferred briefly. At that point, Wieneke's counsel interrupted the questioning and the following colloquy took place:

MR. GUERIN: Your Honor, at this point I would like an opportunity to ask the court to excuse the jury and I would like to address the court. I would like to interrupt this questioning.

THE COURT: Well, can you give me an inkling as to why?

MR. GUERIN: Yes. I talked the matter over with Mr. Wieneke and Mr. Wieneke indicated some reluctance to force this lady to go through this particular matter.

THE COURT: All right. The jury is excused.

Out of the jury's presence, Wieneke pled guilty to all charges. The jury then returned and was excused for the day.

Defendant moved for a mistrial the following day, which was denied without prejudice. Defendant renewed the motion the next day, on the ground that Wieneke's gesturing, the statements of his counsel made in front of the jury, and Wieneke's subsequent absence from the trial prejudiced his case. The motion for a mistrial was denied. When the jury was called in that morning, the judge gave the following cautionary instruction:

THE COURT: Ladies and gentlemen of the jury, I'm going to give you a cautionary instruction in regard to the absence of Mr. Wieneke.

One of the defendants who started this trial is no longer a part of the trial. For legal—legally sufficient reasons, which I'm not going to go into at this time, he is no longer a part of the trial. I instruct you that is not and should not be of concern to you in dealing with the question of the—which ultimately if the case does go to the jury, of the guilt or innocence of Mr. Phillips. And you are not to speculate as to the absence of why the other defendant is no longer standing tri-

5. There is some dispute about the nature of the gesturing. Wieneke's counsel referred to it as "making motions"; defendant's counsel characterized it as "some movement," but stated that his view was blocked. The trial judge did not notice Wieneke's actions. Defendant in his brief contends that Wieneke became "visibly agitated" and was "gesturing and gesticulating to his counsel and to the Court in front of the jury." There is no basis in the record for inferring that Wieneke's actions were more than a minor disruption.

al. And his absence should not control or influence your verdict in any way whatsoever with respect to the defendant who is still here.

The reason for this is even when defendants are tried jointly, the jury is called upon to determine the guilt or the innocence of each defendant separately and the jury will be called upon, even if they are joint defendants, we no longer have joint defendants, to consider the evidence separately as to one defendant and then as to the next defendant. And that the purpose of a joint trial is not to implicate one defendant with the other, it's just a matter of convenience. It amounts to save court time.

The fact that we have only one defendant left in this trial should be of no concern to you because whatever your verdict is, if you do reach a verdict, it has to be based solely upon the evidence that's received in this courtroom as it relates to that defendant.

I want to emphasize again that Mr. Phillips, the remaining defendant, has entered a plea of not guilty and he has therefore denied each and every essential element of the crimes charged. And that the government has a burden of proof beyond a reasonable doubt. This burden is still with the government and never shifts to the defendant.

On appeal, defendant contends that Wieneke's motions, the statements of his counsel, and his subsequent absence from the trial made it impossible for defendant to get a fair trial. We disagree.

■ Denial of a motion for mistrial will not be reversed unless the denial amounts to an abuse of discretion by the trial court. *United States v. Marshall*, 458 F.2d 446, 451 (2d Cir. 1972); *United States v. Bamberger*, 456 F.2d 1119, 1128 (3d Cir.), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2424, 32 L.Ed.2d 668 (1972).[6] We find no abuse of discretion here. The events in question took place on the afternoon of December 18, 1979. When the jury was excused that afternoon, the court made no mention of the incident; but the court gave an appropriate cautionary instruction immediately after the jury was called in the next morning. We believe that the instruction cured any possible prejudicial effect.[7] *See United States v. Smith*, 578 F.2d 1227, 1236 (8th Cir. 1978); *United States v. Lobo*, 516 F.2d 883, 885 (2d Cir.), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *United States v. Marshall*, 458 F.2d 446, 451 (2d Cir. 1972).

■ A court must generally assume that the jury will follow clear instructions if " 'the circumstances are such that the jury can reasonably be expected to follow them.' " *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968) (quoting *Delli Paoli v. United States*, 352 U.S. 232, 242, 77 S.Ct. 294, 300, 1 L.Ed.2d 278 (1957)). In *Bruton*, the Supreme Court recognized that in some situations the risk that the jury will not follow instructions is so great as to warrant reversal of the conviction. *Bruton* presented such a situation: the admission of hearsay evidence of a codefendant's conviction, which implicated the defendant, compelled reversal despite a cautionary instruction.

In the instant case, however, it is reasonable to assume that the jury did follow the

6. The Third Circuit in *Bamberger* characterized the problem as follows:

 This issue presents a delicate balancing of the right of a passive co-defendant to have his cause determined in an atmosphere free of inflammatory speech and gesture, society's interest in speedy trials for those accused of crime, the realities of sound judicial administration, and a consideration of convenience to witnesses. The accommodation of these countervailing considerations is entrusted to the trial judge. So long as he accords the necessary protection to the passive defendant within the parameters of sound judicial discretion we should not disturb his decision.
 456 F.2d at 1128.

7. Even when the jury is informed that a codefendant has pled guilty during trial, it has been held that there is no error if the jury is properly instructed not to consider the codefendant's plea in deciding the guilt or innocence of the remaining defendant. *United States v. Washabaugh*, 442 F.2d 1127, 1129 (9th Cir. 1971).

instructions of the trial judge. Unlike *Bruton*, the remarks of Wieneke's counsel and Wieneke's subsequent removal from the trial did not necessarily implicate defendant. The trial court's instructions were given promptly, and they stated clearly and accurately what the jury could consider in reaching its verdict. Further, the properly admitted evidence of guilt is so convincing, and the prejudicial effect of the events in question is so insignificant by comparison, that even without a curative instruction any error might have been harmless. *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972).

Defendant also argues that in addition to the alleged prejudice caused by the incident during trial, he was denied his right to cross-examine Wieneke, which defendant argues is mandated by the Supreme Court's decision in *Bruton*. The case at bar is, however, distinguishable from *Bruton*. Here, neither Wieneke's actions nor the statements of his attorney implicated defendant; therefore, defendant's Sixth Amendment right of confrontation was not violated.[8]

### III

Defendant asserts that he was denied effective assistance of counsel. He bases this contention on (1) his attorney's affidavit of December 4, 1979, which stated that if his motion for continuance was denied, defendant would be denied effective representation due to inadequate time for trial preparation; and (2) his attorney's performance at trial. We find these arguments to be without merit.

The decision whether to grant or deny a motion for continuance rests within the discretion of the trial judge, and his decision will not be reversed absent an abuse of discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921

(1964); *United States v. Harris*, 501 F.2d 1, 4–5 (9th Cir. 1974); *United States v. Collins*, 435 F.2d 698, 699 (7th Cir. 1970), *cert. denied*, 401 U.S. 957, 91 S.Ct. 983, 28 L.Ed.2d 241 (1971). We cannot conclude that the district court abused his discretion in denying the continuance.

The denial of a continuance, by itself, does not amount to a denial of effective assistance of counsel. *United States v. Valdez*, 418 F.2d 363, 365 (5th Cir. 1969). "Counsel's statements that he was not ready are insufficient to show Sixth Amendment violations. It is the character of the 'resultant proceedings' which must be examined." *United States v. Maxey*, 498 F.2d 474, 483 (2d Cir. 1974).

In *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640–41 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975), we held that the Sixth Amendment guarantees a criminal defendant the right to counsel whose performance meets a minimum standard of professional representation. In determining whether that standard was met, the court must look at the totality of circumstances in the particular case.[9] *United States ex rel. Spencer v. Warden*, 545 F.2d 21, 23–24 (7th Cir. 1976).

Our examination of the record satisfies us that trial counsel's performance more than met minimum professional standards. He made numerous pre-trial motions, requested discovery, made timely objections to questions and the admission of evidence throughout the trial, generally conducted vigorous cross-examination, and made post-trial motions. We note further that defendant's attorney had two months to prepare for trial. Although defendant refers to mistakes allegedly made by counsel during the trial, we believe that this court should not examine trial tactics in the

---

8. The Supreme Court has noted with approval the practice of admitting confessions of a codefendant into evidence when incriminating references to other codefendants are deleted. *Bruton, supra*, 391 U.S. at 134 & n. 10, 88 S.Ct. at 1626 & n. 10.

9. Defendant has the burden of establishing ineffective assistance of counsel. *United States v. Fleming*, 594 F.2d 598 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); *Matthews v. United States*, 518 F.2d 1245, 1246 (7th Cir. 1975).

light of subsequent events. It is clear from the record that trial counsel's representation of defendant did not deny him effective assistance of counsel. *See United States v. Marine*, 413 F.2d 214, 218–19 (7th Cir. 1969), *cert. denied*, 396 U.S. 1001, 90 S.Ct. 550, 24 L.Ed.2d 493 (1970); *Sellers v. Smith*, 412 F.2d 1002, 1004 (5th Cir. 1969). "[T]he effectiveness of counsel is not measured by his success." *United States v. Hammonds*, 425 F.2d 597, 601 (D.C.Cir. 1970).

## IV

Defendant contends that the trial court's denial of his motions to suppress and the admission of certain evidence constitute reversible error.

### A. Search of the Hotel Room

On September 14, 1979, FBI agents went to the Surf Hotel in Chicago to investigate a report that a man involved in the Green Bay kidnapping was there. The agents saw defendant in the lobby, and asked him to identify himself. Defendant said his name was Victor Marchetti, which was an alias he was using at that time. In response to further questioning by the agents, defendant denied knowing Joe Clendenny or Dennis Wieneke or anything about a Green Bay kidnapping. Defendant consented to a search of his room for Clendenny.

After searching the room for Clendenny, the agents asked Phillips if they could search the room for other evidence. At the suppression hearing, there was conflicting testimony on the question of defendant's consent to the search. Defendant did not sign a consent form, and he testified that he did not agree to the search and that he asked for an attorney. Two FBI agents testified that he verbally agreed to the search, and that he did not request an attorney.

 The district court held a hearing on the motion to suppress the evidence seized in the search; at the conclusion of

the hearing, the motion to suppress was denied. A determination of the "voluntariness" of a consent to search "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). "A trial judge's findings of fact ordinarily will not be disturbed unless they are without support in the record." *Ohrynowicz v. United States*, 542 F.2d 715, 718 (7th Cir.), *cert. denied*, 429 U.S. 1027, 97 S.Ct. 650, 50 L.Ed.2d 630 (1976). We cannot conclude that the district court's finding that the consent was voluntary was without support in the record.

### B. Statement to FBI Agents

After the search, defendant was handcuffed and taken to the FBI offices where he was photographed and fingerprinted. An agent advised defendant that he was under arrest, and read defendant the *Miranda* warnings. Defendant refused to sign a *Miranda* waiver, but did give a statement to the agents.

Defendant moved to suppress the statement on the ground that it was not made voluntarily. At the suppression hearing, defendant testified that he was in a weakened condition due to alcohol and drug withdrawal, that he never waived his *Miranda* rights, and that he requested an attorney. The agents testified that he voluntarily consented to questioning, and that he did not ask for an attorney. Defendant had been arrested about ten times, and had thus been advised of his rights before. Based on these facts, the district judge found that defendant understood his rights, and that he made the statement voluntarily; the court therefore denied the motion to suppress.

 The government must prove by a preponderance of the evidence that a confession was voluntary.[10] *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30

---

**10.** A defendant's refusal to sign a written waiver is a factor to be considered in determining whether a statement was voluntary, but it is not controlling. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

L.Ed.2d 618 (1972). There was sufficient evidence in the record to support the trial judge's finding that the government met its burden; therefore, we will not reverse his denial of the motion to suppress defendant's statement.

## C. Photographic Identification

Gary Smith, one of the victims, was shown seven photographs from which he identified defendant as one of the men who kidnapped him. Six of the seven photographs were obviously taken by law enforcement officials, and the other one was a picture of defendant. The photograph of defendant was also the only one of a man with a heavily pock-marked face. Defendant contends that the photographic display was so suggestive that it tainted Smith's subsequent in-court identification of defendant.

After a hearing on the issue, the Magistrate recommended that defendant's motion to dismiss be denied, and the trial court accepted this recommendation. The Magistrate found that Smith had sufficient contact with defendant to make the identification reliable: Smith observed defendant in the parking lot, in the car for several hours, and then in daylight at the end of the trip. Smith had given the police a good description of defendant, he selected defendant's picture from the group quickly, and he was certain of the identification.

■ The Supreme Court has enunciated five factors to be considered in determining the reliability of an identification even when the procedures used were suggestive: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Our consideration of these factors leads us to agree with the trial court that Smith's identification was sufficiently reliable to be admissible, despite the some-

what suggestive nature of the photographic display. Therefore, it was not error for the trial court to deny defendant's motion to suppress.

## D. Admissibility of Physical Evidence

At trial, defendant objected to the admission into evidence of two articles of clothing, a blouse and slacks, allegedly worn by Robin Ramsay on the day of the kidnapping. An FBI agent testified at trial that semen stains were found on the clothing, but these could not be tied to defendant. Defendant objected to the admission of the clothing because the government failed to establish a chain of custody.

■ We hold that the trial court's decision to admit the clothing into evidence was not erroneous. "The chain of custody is not relevant when a witness identifies the object as the actual object about which he testified." *United States v. Blue*, 440 F.2d 300, 303 (7th Cir.), *cert. denied*, 404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68 (1971). During her testimony at the trial, Ms. Ramsay positively identified the blouse and slacks admitted into evidence as the ones she was wearing on the day of the kidnapping. Therefore, the prosecution was not required to establish a chain of custody.

## V

Finally, defendant contends that the consecutive sentences imposed by the trial judge were illegal. Defendant received two life sentences, one for each kidnapping count, a five-year sentence on the Mann Act charge, and a five-year sentence for interstate transportation of a stolen motor vehicle. All of the sentences were to run consecutively. Defendant argues that the consecutive sentences were improperly imposed because all of the criminal acts committed here were really parts of one transaction.

In discussing the issue raised by defendant, we must consider two aspects of the sentences separately: (1) is it permissible to impose consecutive sentences on a criminal defendant for kidnapping and a Mann Act

violation committed in the same transaction, and (2) is it permissible to impose consecutive sentences for kidnapping two victims in one trip.

### A. Kidnapping and Mann Act Convictions

We have held in the past that "[a] court may ... in a proper case impose separate and consecutive sentences for violation of different statutory provisions in a single transaction. The test 'is whether each provision requires proof of a fact which the other does not.'" *United States v. Mathis*, 579 F.2d 415, 418 (7th Cir. 1978) (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). The Supreme Court's recent opinion in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), however, modified the *Blockburger* approach. As the Sixth Circuit stated in *Pandelli v. United States*, 635 F.2d 533 (6th Cir. 1980):

> The *Blockburger* test, as modified in *Whalen* ..., comes into play only after other techniques of statutory construction have proved to be inconclusive. The first step is for the court to inquire "whether Congress intended to punish each statutory violation separately," *Jeffers v. United States*, 432 U.S. 137, 155 [97 S.Ct. 2207, 2218, 53 L.Ed.2d 168] (1977). To determine the congressional intent it is necessary to examine the statutory language and legislative history, as well as to utilize other techniques of statutory construction.... The Court reaches the *Blockburger* test only when those prior techniques of construction have failed to resolve the question of whether the legislature intends to allow cumulative punishments for violation of two statutes.

*Id.,* at 536 (citation omitted).

In *Hattaway v. United States*, 399 F.2d 431, 433 (5th Cir. 1968), the court held that the congressional purposes underlying the enactment of the Mann Act and the kidnapping statute were different, and that therefore a defendant could be prosecuted for both even though the prosecutions were based on the same acts. We agree with that holding. This circuit has recognized that congressional intent in enacting the Mann Act was to protect the morals of the community, while the purpose of the kidnapping statute was to protect the liberty and life of the victim. *Seadlund v. United States*, 97 F.2d 742, 747 (7th Cir. 1938). Further, the two statutes were enacted more than twenty years apart.

Even if the legislative intent is unclear, our interpretation of the Mann Act and kidnapping statute as two distinct offenses is supported by the *Blockburger* analysis. The elements of a Mann Act charge are the knowing or wilful interstate transportation of a woman for immoral purposes. The elements of kidnapping under the federal statute are the knowing or wilful seizure of an unconsenting person who is detained and transported across state lines. *See Hattaway v. United States, supra,* 399 F.2d at 433.

For the foregoing reasons, we hold that the imposition of consecutive sentences for kidnapping and a Mann Act violation committed against one victim in one trip is permissible.

### B. Kidnapping of Two Victims

In the instant case, two victims were kidnapped, detained, and transported in one transaction. Defendant would have us find that this constitutes only one violation of 18 U.S.C. § 1201(a). We disagree.

Defendant relies principally on *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In that case, defendant transported two women in a single trip in violation of the Mann Act, and the trial court imposed two consecutive sentences. The Supreme Court held that defendant committed only one offense, and that therefore the consecutive sentences were unlawful. The Court enunciated the principle that if Congress does not clearly define a single unit of prosecution, "the ambiguity should be resolved in favor of lenity." *Id.* at 83, 75 S.Ct. at 622.

*Bell* is distinguishable from the case at bar for several reasons. First, as

noted previously, the purposes of the statutes are different. The kidnapping statute was enacted to protect individual victims, while the purpose of the Mann Act is to preserve community moral standards. The Mann Act does not protect the individual woman transported in the same way that the kidnapping statute protects a victim; the consent of the woman involved is no defense to a Mann Act charge, but would be a defense to kidnapping. Second, "where the legislative purpose is the protection of individual victims, the rule of lenity does not obtain." *Barringer v. United States*, 399 F.2d 557, 558 (D.C.Cir.1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969) (citing *Ladner v. United States*, 358 U.S. 169, 174, 79 S.Ct. 209, 212, 3 L.Ed.2d 199 (1958), and *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915)). Third, the facts in the case before us are distinguishable from *Bell* in an important aspect. Here, the defendant did not kidnap both victims by one act. Defendant held his gun to Smith's head during the seizure, while Wieneke pointed his gun at Ramsay. Thus defendant was guilty of actually kidnapping Smith but only of aiding and abetting in the kidnapping of Ramsay.

We therefore conclude that the imposition of consecutive sentences for the kidnapping of two victims in a single transaction was proper.

The conviction appealed from is hereby AFFIRMED.