**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oscar Donato BARRIENTOS,
Defendant-Appellant.**

**No. 84–1470.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1985.

Decided March 28, 1985.

Rehearing Denied April 30, 1985.

Frances C. Hulin, Asst. U.S. Atty., Danville, Ill., for plaintiff-appellee.

Traci Nally Harris, Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, Champaign, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, and BAUER and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

On February 3, 1984, in the Central District of Illinois, defendant Oscar Barrientos and several co-defendants were jointly tried before a jury and Barrientos was found guilty of knowingly and intentionally possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Barrientos appeals his conviction, arguing, *inter alia*, that the trial court erred in refusing to give a cautionary jury instruction regarding the effect of the midtrial acquittal of a co-defendant on the remaining portions of the case and on the credibility of the witnesses. We agree that the court committed error by failing to give a cau-

tionary instruction regarding the co-defendant's acquittal; that error, however, was not reversible error. We therefore affirm Barrientos's conviction.

## I

On September 29, 1983, co-defendants Barrientos, Carl Edwards, Lautaro Suarez and Jon Compton arrived in Danville, Illinois, from Florida and checked in at the Danville Sheraton Inn. The men took separate rooms and in the elevator, on their way to their rooms, a man unknown to Barrientos gave Suarez a brown paper sack. Suarez later showed the sack, which contained cocaine, to Barrientos. Barrientos and two local women, McDaniel and Anderson, ingested cocaine that evening at the motel.

On September 30, 1983, Barrientos, Suarez, and Compton moved to the Danville Quality Inn. Barrientos and Suarez shared room 202 and Compton was in room 122. Suarez placed the large package of cocaine in Barrientos's suitcase. Barrientos asked Suarez for an ounce of cocaine for personal use, received it, and placed the ounce of cocaine in one of his shoes packed in his suitcase. On the evening of September 30, Barrientos went to room 122 and saw Compton, McDaniel, and a woman named Joan Wagle in the room smoking marijuana. Although Barrientos did not know it, Wagle was working with the police. The police called Wagle while she was in room 122 and, explaining that the call was from her babysitter and that she had to leave, Wagle asked for a quick line of cocaine. Barrientos then left room 122, got his ounce of cocaine from room 202, and returned to room 122. While testimony is contradictory as to exactly what happened next, it is clear that Wagle cut a small rock of cocaine supplied by Barrientos, used a rolled bill to snort the cocaine, and then left the motel with the bill in her purse. Wagle then turned the bill over to the police who field-tested it for cocaine and obtained, on the basis of that field test, a warrant to search rooms 122 and 202 of the Quality Inn.

Shortly after 3:00 a.m. on October 1, 1983, four special agents and several uniformed officers entered room 202 with a motel passkey without first announcing their purpose and authority. No noise was emanating from room 202 and the lights were out inside the room. Upon entry, the police identified themselves to Barrientos, who was asleep and nude, and Suarez. After handcuffing Barrientos while he was still in bed, the police put his pants on him and then put him in a chair. Suarez was also handcuffed and placed in another chair. An agent informed Barrientos and Suarez of their *Miranda* rights. The agent also told them that he and the other agents had a search warrant. When Barrientos asked for a shirt to wear, an investigator looked inside Barrientos's suitcase and discovered the large package of cocaine. The package was displayed to Barrientos, who stated "I guess that's what you're looking for." During this time Barrientos and Suarez conversed in Chilean slang in front of police officers. Barrientos unsuccessfully attempted to introduce into the record evidence that during this conversation Suarez had told Barrientos to say that the cocaine was Barrientos's. The police took Barrientos and Suarez to the Public Safety Building in Danville. Barrientos also unsuccessfully attempted to introduce into evidence testimony that Suarez had advised Barrientos to claim the cocaine was his because Barrientos was going to be charged with possession anyway. Barrientos did claim the cocaine was his in later interrogations by the police at the Public Safety Building.

In February 1984, Barrientos was tried with Suarez, Donald Barber, another member of the conspiracy, Compton, and Edwards, for conspiracy to distribute cocaine, possession of cocaine with intent to distribute and conspiracy to distribute marijuana. During the second week of trial Suarez failed to return to court, in violation of the conditions of his bond. On the first day of his absence the court explained to the jury:

We have reconvened and there is something I want to call your attention to and

tell you about. The Defendant Suarez is not present. The Defendant Suarez is absent. The case will go forward nonetheless. You are not to consider the fact of his absence as any evidence in the case as it would regard either him or any party.

Tr. at 705.

At the end of the evidence, but before closing arguments, the court instructed the jury as follows:

You should be advised that the court has given judgment of acquittal and discharged Suarez on Counts I and II. The court has acquitted the Defendant Barrientos on the charge of conspiracy to distribute marijuana in Count III, and has also acquitted the Defendant Barber on the charge of conspiracy to distribute marijuana in Count III.

Tr. at 1585.

Barrientos was the only defendant convicted by the jury. He was found guilty of knowingly and intentionally possessing cocaine with the intent to distribute and sentenced to three years of imprisonment with a special parole term of five years in addition to any parole term that might be imposed under the three year committment. Barrientos now appeals this conviction.

## II

Most of the appellate opinions addressing the question of what a jury should be told by the trial judge regarding the sudden midtrial absence of one or several co-defendants in a joint trial involve co-defendants who have pled guilty during the trial. *See, e.g., United States v. Anderson,* 642 F.2d 281 (9th Cir.1981); *United States v. Phillips,* 640 F.2d 87 (7th Cir.), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981); *United States v. White,* 589 F.2d 1283 (5th Cir.1979); *United States v. Hansen,* 544 F.2d 778 (5th Cir.1977); *United States v. Beasley,* 519 F.2d 233 (5th Cir.1975); *United States v. King,* 505 F.2d 602 (5th Cir.1974); *United States v. Washbaugh,* 442 F.2d 1127 (9th Cir.1971); *United States v. Harrell,* 436 F.2d 606 (5th Cir.1970), *cert. denied,* 409

U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); *United States v. Jones,* 425 F.2d 1048 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). A few cases involve midtrial acquittals, *United States v. McCoy,* 539 F.2d 1050 (5th Cir.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977); *United States v. Campbell,* 507 F.2d 955 (9th Cir.1974), and one case involves a government motion to dismiss certain co-defendants. *See, e.g., United States v. DeLucca,* 630 F.2d 294 (5th Cir.1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 819 (1981). Whether his absence depends on a guilty plea, an acquittal or a dismissal makes a difference to the co-defendant who has pled, been acquitted, or dismissed, but to the defendant still on trial, and to the trial judge presiding over the jury trial the result of any of these actions is much the same: a co-defendant has mysteriously disappeared from the jury's sight and his absence may affect, perhaps subconsciously, the jury's assessment of the guilt of the remaining defendant. While a co-defendant's guilt, innocence, or absence should not reflect on the remaining defendant's guilt, "the potential nevertheless exists." *United States v. DeLucca,* 630 F.2d 294, 298 (5th Cir.1980).

Most courts agree that the jury must be told something regarding the co-defendant's absence to combat this potential denial of a fair trial to the remaining defendant. Some courts have suggested that the preferred method is to tell the jury precisely what happened, for instance, that the defendant has pled guilty, if that is the case. *See, e.g., United States v. Beasley,* 519 F.2d 233, 239 (5th Cir.1975); *United States v. Jones,* 425 F.2d 1048, 1054 (9th Cir.1970). Believing that "honesty" is the "fairest procedure," these courts have suggested that giving the reason for the co-defendant's departure will prevent curiosity, conjecture, and uncertainty on the jury's part. *Id.*

Other courts have suggested, however, that at least where the defendants are closely identified with one another as to the

crimes charged, it is better practice to tell the jury simply that the absent co-defendant should not be considered a defendant any longer and that his guilt or innocence should play no part in future deliberations. *See, e.g., United States v. Washbaugh*, 442 F.2d 1127, 1129 (9th Cir.1971). This court has implied, without specifically holding, that a cautionary instruction which merely informs the jury of the defendant's absence is the preferred method in this circuit for abating a jury's curiosity regarding the fate of a co-defendant. *United States v. Phillips*, 640 F.2d 87 (7th Cir.1981). In *Phillips*, a co-defendant pled guilty outside the presence of the jury after his attorney, in the presence of the jury, indicated that his client was reluctant "to go through this particular matter," and after the co-defendant had made some "gestures" to his attorney, apparently suggesting that he wanted to stop the trial. When the jury was reconvened the next day, the judge informed them that the co-defendant was absent and that they were not to consider this fact with regard to their verdict on the remaining defendant. The trial judge denied motions for mistrial based on the potential prejudice of the co-defendant's gestures and his attorney's remarks, and this court upheld the denial, holding that "the instruction cured any possible prejudicial effect." *Id.* at 91.

We follow here the line of reasoning we began to develop in *Phillips* and hold that when a co-defendant becomes absent midtrial for any reason, the best practice is to acknowledge his absence to the jury and to instruct them that it should have no effect on their deliberations regarding the remaining defendants. We think the instruction given by the trial judge in the *Phillips* court is exemplary.

Ladies and gentlemen of the jury, I'm going to give you a cautionary instruction in regard to the absence of [the absent defendant].

One of the defendants who started this trial is no longer a part of the trial. For legally sufficient reasons, which I'm not going to go into at this time, he is no longer a part of the trial. I instruct you that is not and should not be of concern to you in dealing with the question of the guilt or innocence of [the remaining defendant]. And you are not to speculate as to the absence of or why the other defendant is no longer standing trial. And his absence should not control or influence your verdict in any way whatsoever with respect to the defendant who is still here.

The reason for this is even when defendants are tried jointly, the jury is called upon to determine the guilt or the innocence of each defendant separately and the jury will be called upon, even if they are joint defendants, to consider the evidence separately as to one defendant and then as to the next defendant. And that the purpose of a joint trial is not to implicate one defendant with the other, it's just a matter of convenience. It amounts to saving court time.

The fact that we have only one defendant left in this trial should be of no concern to you because whatever your verdict is, if you do reach a verdict, it has to be based solely upon the evidence that's received in this courtroom as it relates to that defendant.

I want to emphasize again that the remaining defendant has entered a plea of not guilty and he has therefore denied each and every essential element of the crimes charged. And that the government has a burden of proof beyond a reasonable doubt. This burden is still with the government and never shifts to the defendant.

The *Phillips* instruction informs the jury of the co-defendant's absence but not the reason for his absence, and instructs them on their duty to determine separately the guilt or innocence of each defendant. This instruction focuses on the jury's task at hand. It provides them with the relevant information that they need to know to render effectively their services as jurors. Information regarding the reason for a co-defendant's absence is irrelevant to their task. It only adds grist to the mills of

speculation for the jurors to know that one defendant has admitted to guilt or that another has been found not guilty. Emphasis on these matters distracts the jury from what should be their singular focus: the remaining defendant's guilt or innocence. We think that the *Phillips* instruction directs their focus in the proper direction.

■ In this case, at the time of the co-defendant's voluntary and mysterious absence from the trial, the trial judge explained to the jury simply that "Defendant Suarez is absent. The case will go forward nonetheless. You are not to consider the fact of his absence or any evidence in the case as it would regard either him or any party." Tr. 705. We think that this alone, coupled with further instructions at the end of the trial, would have been sufficiently informative for the jury. At the end of the presentation of the evidence, but before the closing arguments, however, the judge also informed the jury that "[y]ou should be advised that the court has given judgment of acquittal and discharged Suarez on Counts I and II." Tr. 1585. The judge also informed the jury that Barrientos and Barker had been acquitted on Count III.

The judge stated to counsel outside the presence of the jury that he would give this instruction because he thought "honesty is the best policy." Tr. 1572. Also outside the presence of the jury, the judge denied Barrientos's counsel's request for an instruction that the acquittal of Suarez "should in fact bear determination [sic] on the credibility of my client." Tr. 1572. The judge denied the motion, reasoning that the jurors were the "sole judge of credibility." Tr. 1572.

At the conclusion of the closing arguments, however, the judge did instruct the jury generally. He stated that "[e]ach defendant is presumed to be innocent of the charges against him. This presumption remains with each defendant throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from the evidence in the case you are convinced beyond a reasonable doubt

that a defendant is guilty." Tr. 1714. The judge also stated "[y]ou are the sole judges of the credibility of the witnesses and the weight to be given to the testimony of each of them," Tr. 1715, and further discussed how to judge credibility later in the instructions. Tr. 1717. Finally, the judge stated that "[a]lthough the defendants are being tried jointly, you must give separate consideration to each defendant. In doing so, you must analyze what the evidence in the case shows with respect to each defendant. Each defendant is entitled to have his case decided on the evidence and the law applicable to that defendant." Tr. 1716.

Defendant contends that if we find these instructions erroneous, we must reverse his convictions. We disagree. Where a jury has been told the reason for a co-defendant's absence from the trial, most courts agree that it is the better practice to give the jury a cautionary instruction similar in purpose to the *Phillips* instruction. Failure to instruct the jury regarding a co-defendant's midtrial absence because of a guilty plea, however, has rarely been found to be plain error. *See, e.g., United States v. Anderson,* 642 F.2d 281 (9th Cir.1981); *United States v. King,* 505 F.2d 602 (5th Cir.1974); *United States v. Jones,* 425 F.2d 1048 (9th Cir.1970) (all declining to hold plain error the failure to instruct). In *De-Lucca,* where the jury was told of the dismissal of one co-defendant on motion of the government, the court declined to find plain error, reasoning that "[o]nly in those rare situations in which other 'aggravating circumstances' have exacerbated the prejudice will failure to give cautionary instructions result in plain and reversible error." *DeLucca,* 630 F.2d at 299. In *DeLucca* the court found that no aggravating circumstances were present where it was shown that the judge repeatedly urged the jurors in his general instructions to consider the evidence separately as to each defendant, and was himself temperate and fair to both sides throughout the trial. *Id.* at 299–300. In *United States v. McCoy,* 539 F.2d 1050 (5th Cir.1976), the court held that where a trial judge had, apparently, informed the

jury of the midtrial acquittal of nine of the seventeen defendants and then refused a request for a limiting instruction regarding those acquittals, no abuse of discretion had been shown. *Id.* at 1064 n. 22. *See also United States v. Campbell,* 507 F.2d 955 (9th Cir.1974) (where jury told of co-defendant's absence, but not of his acquittal, and there was no request for a limiting instruction, it was not plain error to rely on general instructions to prevent any prejudicial effect to the remaining defendant).

The cases in which error was found in informing the jury of the reason for a co-defendant's absence and failing to give limiting instructions involve a similar aggravating circumstance: the co-defendant's guilty plea had been made prior to trial and the jury therefore never saw the co-defendant, at least as a party in the case. In *United States v. Harrell,* 436 F.2d 606 (5th Cir.1970), two defendants, Rufus Eafie Harrell and Durwood Norris, were charged with violations of the Internal Revenue laws pertaining to non-tax paid distillery spirits. Before trial Norris pled guilty to all counts. At trial, proof of Norris' plea was offered to the jury without any purpose for its introduction offered other than to suggest Harrell's guilt. Defense counsel did not request limiting instructions, and none were given. The court found it plain error not to have given an instruction and noted it would have been better practice to have excluded such proof. *Id.* at 617. In *United States v. Hansen,* 544 F.2d 778 (5th Cir.1977), the court found reversible error where the jury venire was told during voir dire of a co-defendant's guilty plea and instructed to reach a verdict only on the evidence of guilt or innocence of the remaining defendant. The co-defendant had never been seen by the jury. The court held that even an instruction was insufficient to avoid the "obvious" prejudice to the party charged with "complicity in the acts of self-confessed guilty participants." *Id.* at 780.

Although the district court in this case acknowledged to the counsel outside the presence of the jury that he had "never had a defendant voluntarily absent himself or herself in the middle of a conspiracy trial," Tr. 703, he handled this new and unusual circumstance carefully. While we have recommended above what the better practice is in instructing the jury as to the defendant's absence, we feel confident that the judge's decision to inform the jury that Suarez had been acquitted and to not give them any further limiting instructions at that time was not so prejudicial to the defendant as to constitute reversible error. The judge considered the matter carefully and made only a plain, simple statement of the fact of acquittal. Moreover, the judge's general instructions as to the presumption of innocence, the assessment of credibility, and the separate consideration to be given to the case against each defendant, sufficiently protected the defendant from prejudice in his trial.

### III

The defendant raises other claims of error which we find unpersuasive. The defendant argues that the trial judge committed reversible error when he denied Barrientos's request for a jury instruction on the lesser included offense of possession. Barrientos's indictment had not charged him with possession but only with distribution or possession with intent to distribute.

■ Defendants are generally entitled to a lesser included offense jury instruction "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). *See also United States v. Cova,* 755 F.2d 595 (7th Cir.1985). The judge in this case found that there was insufficient evidence on which to base an instruction on possession. This finding accords with the general understanding that possession is not a necessary element of a distribution charge. *See United States v. Brown,* 604 F.2d 557 (8th Cir.1979); *United States v. Nelson,* 563 F.2d 928 (8th Cir.1977); *Walker v. United States,* 344 F.2d 795 (1st Cir.1965). The evidence at trial given by Barrientos

was that he denied that the cocaine was his, except for the small package of 26 grams kept inside his suitcase. The two larger packages of nearly 750 grams of cocaine, originally claimed as his own by Barrientos, clearly were meant for distribution. We think on this evidence that the trial judge properly denied a lesser included offense instruction.

■ The defendant also contends that the trial judge's denial of his motion to suppress and the refusal to admit certain evidence constituted reversible error. The defendant argues that the government did not prove exigent circumstances existed which justified their unannounced, forcible entry upon execution of the search warrant and that the trial court erred by refusing to permit Barrientos to conduct an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The trial judge in this case carefully considered the defendant's motion to suppress. He found, however, that exigent circumstances justified the no-knock search. The judge found that the police officers had information from informants that could have led the police officers to reasonably believe the defendants were armed and dangerous. The police officers also had information that the occupants of the room had possession of cocaine in substantial quantities which could have been destroyed or disposed of quickly had the police given warning of their presence and their purpose. We cannot conclude that the trial judge's findings were without support in the record.

■ Defendant also challenges the denial of a *Franks*-type hearing. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court established that a hearing can be held to challenge the veracity of a search warrant affidavit if a defendant alleges that the affidavit contains deliberate falsehoods or reckless disregard of the truth, notes the specific false portions of the affidavit and offers proof of the falsity by affidavits or other sworn statements. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. This court in

*United States v. McDonald*, 723 F.2d 1288 (7th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984), held that the defendant must do more than construct a self-serving statement which refutes the warrant affidavit to overcome the presumption of validity. The defendant must make a substantial preliminary showing of falsity. *Id.* at 1294.

The trial judge in this case found that the two affidavits presented by Barrientos, one from the defendant and one from his co-defendant John Compton, did not rise to the level of a substantial preliminary showing. The judge held that the affidavit merely made conclusory statements regarding the veracity of the informant Wagle and that these statements did not meet the *Franks* test. We find no error in the judge's assessment of the affidavits or in his interpretation of the *Franks* requirements.

■ Finally, the defendant argues that the trial court erred by refusing to admit certain statements made by Suarez in the motel room and the Public Safety Building. The trial judge conducted a substantial hearing outside the presence of the jury to consider the offer of proof with respect to this testimony and found the statements were out-of-court statements offered to prove the truth of the matter asserted, namely that Suarez had told Barrientos to say that the cocaine was his. We find the trial judge's assessment of Barrientos's statements regarding Suarez's statements to have been proper, and we therefore are not persuaded by defendant's claim of error.

IV

For the reasons stated above we affirm the defendant's conviction. When a co-defendant becomes absent from a trial, whether through a plea, an acquittal, a government motion to dismiss, temporary flight, or for any other reason, a trial court should acknowledge the co-defendant's absence to the jury and instruct them on their duty to consider the evidence of guilt or

innocence as to the remaining defendant without any reference to any implications of the co-defendant's absence. The failure to give such an acknowledgement and instruction may result in reversible error where circumstances of the case indicate that the defendant has been denied a fair trial. Such circumstances were not, however, present in this case. The defendant's conviction is affirmed.

Affirmed.