UNITED STATES of America,
Plaintiff–Appellant,

v.

James Paul SINGER, Defendant–
Appellee.

No. 90–2148.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1990.

Decided Sept. 17, 1991.

Rehearing and Rehearing En Banc
Denied Oct. 1, 1991.

James L. Santelle (argued), Eric J. Klumb, Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellant.

William E. Callahan, Jr. (argued), Davis & Kuelthau, Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge, and POSNER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

On the morning of January 25, 1989, officers of the Milwaukee County Sheriff's Department, armed with a search warrant, made an unannounced entry into the private residence of James Paul Singer. The search which followed uncovered 3.2 kilograms of methamphetamine. As a result of this discovery, Singer was charged with conspiring to manufacture and distribute amphetamine and methamphetamine, in violation of 21 U.S.C. § 846, and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Before trial, Singer moved to suppress the physical evidence seized by the police during the search of his house, as well as any statements he made to law enforcement officials following the search, on the grounds that the search had violated his state and federal constitutional rights. Specifically, he maintained that the failure of the Milwaukee County Sheriff's Department officers to knock on his door and announce their presence and purpose before entering his home infringed his fourth amendment right to be free from unreasonable searches and seizures. The district court granted his motion to suppress, 727 F.Supp. 1281, and the government now appeals the ruling pursuant to 18 U.S.C. § 3731.

## I.

The events leading to Singer's arrest began when a local law enforcement agency received two anonymous tips that Singer was selling a variety of illegal drugs—cocaine, crack, acid, speed, and marijuana—out of his home. One of the tips, a Community Against Pushers (CAP) report, also stated that Singer possessed firearms (handguns) and had made threats. Approx-

imately six months later, the police began a criminal investigation of Singer. As part of this investigation, law enforcement officials conducted garbage searches at Singer's home which uncovered paper folds, plastic strips, plastic gloves, razors, drug records and baggies. Some of this drug paraphernalia tested positive for the presence of cocaine and methamphetamine residue, corroborating the information previously provided by the anonymous tips. In addition, following the garbage searches, a confidential informant made a controlled purchase of methamphetamine from Singer at his residence.

Sergeant Alton D. Porter and Detective Mary K. Sage of the Office of the Milwaukee County Sheriff's Department took this information before a Wisconsin circuit court judge to request that search warrants be issued for Singer's person, house, garage and automobiles. After listening to the officers lay out their case against Singer, the judge concluded that probable cause existed (except with respect to the automobiles) and issued the warrants.

Having obtained the warrants, the testifying officers additionally asked the judge to include a no-knock provision in the warrant for the residence which would allow them to enter Singer's home without first announcing their presence.[1] To justify this request, the testifying officer presented the judge with the anonymous citizen complaints which alleged that large amounts of drugs were being sold out of Singer's home and the CAP report stating that Singer possessed handguns.[2] Based on her experiences as a police officer, Detective Sage also testified that drug dealers frequently have weapons in their possession. And finally, she stated that there was a possibility that the drugs would be destroyed if police entry into Singer's home was delayed. Relying on this testimony, the

1. The Wisconsin statute governing the issuance of warrants provides that "[a]ll necessary force may be used to execute a search warrant or to effect any entry into any building or property or a part thereof to execute a search warrant." Wis.Stat. § 968.12(2). Thus, while the language of the statute does not specifically authorize no-

knock warrants, it does not prohibit them either.

2. Although the CAP report also indicated that Singer had made threats, the testifying officers did not bring this information to the attention of the judge issuing the warrant.

judge granted the request on the grounds that it would both better ensure the safety of the officers executing the warrant and prevent Singer from possibly destroying evidence of his illegal activities.

Early the following morning, approximately fifteen Milwaukee County Sheriff's Department officers executed the warrant. Operating in no-knock fashion, they broke down the back door with a sledgehammer and entered Singer's home. The officers then proceeded to search through the house, while repeatedly shouting "Police, Search Warrant." Shortly after entering the residence, police found Singer lying awake in an upstairs bedroom with his wife and baby daughter. At that time, the officers read the contents of the warrant to Singer and informed him of his constitutional rights. Singer quickly made incriminating statements which confirmed the presence of controlled substances in his home.[3] By the time the search was complete, the officers had uncovered 3.2 kilograms of methamphetamine with a street value exceeding $100,000, one pound of marijuana, $40,000 in United States currency, drug paraphernalia and records, three handguns, two rifles, and a shotgun. Singer offered no resistance at any time during the police search.

Singer and Brian J. Halenka, a co-conspirator, were subsequently charged in a federal indictment in the United States District Court for the Eastern District of Wisconsin.[4] Before trial, Singer moved to suppress the fruits of the search, arguing that no particularized circumstances justified either the issuance of a no-knock warrant or the officers' execution of the warrant in a no-knock manner. Based on his review of the record, the magistrate concluded that Singer was correct in his contention that the search had violated his constitutional rights. Concurring in the magistrate's de-

termination, the district judge entered Singer's requested order.

Following entry of the order, the United States Attorney's office informed the court that it planned to appeal the ruling and specifically indicated that part of the government's appeal would focus on whether the good faith exception to the exclusionary rule made suppression an inappropriate remedy in this case. In response, the district court vacated its previous order and conducted a formal evidentiary hearing on the issue of the officers' good faith reliance on the legality of the warrant. After listening to testimony and arguments on the issue during a pre-trial evidentiary hearing, the district judge again concluded that the no-knock provision of the state search warrant was improperly included and that no additional information was acquired between the time of the warrant's issuance and its execution which would justify the officers entering Singer's home without first knocking and announcing their presence. The district court also ruled that the good faith exception to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was inapplicable to the facts of this case, although it supplied no reason for this conclusion. It then granted the defendant's motion to suppress the evidence seized during the search.

## II.

■ We must initially address the issue of what law—Wisconsin state law or federal law—governs the admissibility of evidence seized during the execution of the warrant. Although recognizing that federal law and Wisconsin state law differed little with respect to the reasonableness of no-knock searches, the district court concluded that state law governs the legality of searches conducted by state officials so

---

**3.** While the record is unclear, the parties apparently disagree over whether Singer made any statements to the police while at the police station. There, he allegedly admitted that he had recently possessed and distributed methamphetamine and implicated himself in the past operation of a methamphetamine production labo-

ratory in Tripoli, Wisconsin. Because it has no bearing on the legal issues involved in this case, we need not concern ourselves with this dispute.

**4.** Halenka has since pled guilty to the one count of conspiracy to distribute amphetamine and methamphetamine in which he was charged.

long as the law does not violate the fourth amendment. The court then proceeded to analyze the admissibility of the evidence gained in the officers' no-knock search under the legal standard set out in the Wisconsin case of *State v. Cleveland,* 118 Wis.2d 615, 348 N.W.2d 512 (1984). This approach is inappropriate for evidentiary determinations in federal criminal cases.

As we have noted before, federal standards control the admissibility of evidence in a federal prosecution even though the evidence was seized by state officials and would not be admissible in state court. *United States v. D'Antoni,* 874 F.2d 1214, 1218 (7th Cir.1989); *United States v. Mealy,* 851 F.2d 890, 907 (7th Cir.1988). Whether the evidence in the case was seized in contravention of the constitution or laws of the state of Wisconsin does not control its admissibility in federal criminal proceedings; and accordingly, the officers' compliance or lack of compliance with Wisconsin law (as set forth in *Cleveland*) is irrelevant. Rather, the proper standard for federal application provides that evidence seized by state law enforcement officers is admissible in a federal criminal proceeding if it is obtained in a manner consistent with the protections afforded by the United States Constitution and federal law. *D'Antoni,* 874 F.2d at 1218; *Mealy,* 851 F.2d at 907.

In applying this standard, the initial question we must therefore answer is whether the state judge's authorization of a warrant was consistent with the fourth amendment to the United States Constitution. Here, it clearly was. The police presented information to the judge indicating that an informant had made a controlled buy from Singer's home, that searches of the defendant's garbage had revealed drug paraphernalia which tested positive for cocaine and methamphetamine

residue, and that anonymous tips had alleged Singer was selling drugs from his home. Probable cause, therefore, existed to support the issuance of the warrant.

But, Singer's argument that the evidence should be suppressed is not based on a claim that the police lacked probable cause to obtain the search warrant. Rather, his complaint is that the officers' execution of the warrant was unconstitutional.[5] We disagree.

As our prior discussion indicates, we must determine if the search contravened federal constitutional or statutory standards—in this case, the fourth amendment and 18 U.S.C. § 3109.[6] The fourth amendment, through the fourteenth amendment, demands that state officials act reasonably in conducting that search. U.S. CONST., amend. IV; *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *United States v. Andrus,* 775 F.2d 825, 844 (7th Cir.1985) (citing *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)). Thus, "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'" *Dalia v. United States,* 441 U.S. 238, 257, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979). In the context of a no-knock entry, the courts have concluded that § 3109, the federal statute which governs the execution of federal warrants and encompasses the constitutional requirements of the fourth amendment, provides the proper framework for analysis of the reasonableness of the officers' entry. *United States v. Andrus,* 775 F.2d at 845; *United States v. Valenzuela,* 596 F.2d 824, 830 (9th Cir.), *cert. denied,* 441 U.S. 965, 99

---

**5.** In his brief and at oral argument, Singer challenged the constitutionality of the manner in which the officers executed the search under Wisconsin law. We address these same challenges under the controlling federal standard.

**6.** The federal statute governing the execution of a search warrant provides that:

The officer may break open any outer or inner door or window of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant.

18 U.S.C. § 3109.

S.Ct. 2415, 60 L.Ed.2d 1071 (1979). Under § 3109, an officer's failure to knock and announce his presence before entering will be excused only if "exigent circumstances" exist which justify executing the search in a no-knock fashion. *See Sabbath v. United States*, 391 U.S. 585, 591, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *United States v. Barrientos*, 758 F.2d 1152, 1159 (7th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986). Such exigent circumstances exist, the courts have held, when a suspect's awareness of the search would increase the danger to police officers or others, or when an officer must act quickly to prevent the destruction of evidence. *See, e.g., Ker*, 374 U.S. at 47, 83 S.Ct. at 1636 (Brennan, J., dissenting); *Barrientos*, 758 F.2d at 1159.

In this case, the testifying officers believed two justifications supported their request for a no-knock entry into Singer's home. First, Detective Sage stated (based on her work experiences) that there is a possibility the drugs will be destroyed if police entry into a home is delayed. Second, the testifying officer presented the judge with information indicating that the safety of the police officers executing the warrant would be endangered if the warrant was executed in the usual manner; two anonymous citizen complaints alleged that large amounts of drugs were being sold out of Singer's home and one of the complaints indicated that Singer possessed handguns and had made threats. In addition, Detective Sage also testified that drug dealers frequently have weapons in their possession. Relying on this testimony, the state court circuit judge granted the officers' request for the no-knock warrant on the grounds that it would better ensure the safety of the police officers executing the warrant and prevent the possible destruction of evidence of illegal activities. These same facts, of course, may be used to meet the federal standard applicable to no-knock entries.

When law enforcement officials are aware of facts or circumstances indicating that a more reasonable entry might endanger the safety of the officers participating in the search (or members of the surrounding community), a no-knock entry may be justified. *Ker*, 374 U.S. at 47, 83 S.Ct. at 1636 (Brennan, J., dissenting); *Barrientos*, 758 F.2d at 1159 (police knowledge that defendant was "armed and dangerous" sufficient to support no-knock entry); *U.S. v. Jefferson*, 714 F.2d 689, 694 (7th Cir.1983) (no-knock entry warranted where drug business "closely guarded"). Here, the officers believed that a no-knock entry would provide greater protection for police officers executing the search. Specifically, they were in possession of anonymous tips revealing that Singer had a gun and a CAP complaint stating that the defendant had made threats in support of their claim that executing the search warrant in no-knock fashion would decrease the risk of injury to the officers. When viewed in light of Singer's suspected involvement in the sale of large amounts of illegal drugs, we believe that this information (and the inferences drawn from it) provide sufficient grounds to satisfy the "exigent circumstances" requirement.

Two factors support a reasonable presumption that Singer's possession of a firearm posed a threat to the officers executing the warrant. First, the CAP complaint alleged that Singer was involved in the sale of illegal drugs *and* was involved with guns and had made threats,[7] creating an inference that the handguns were related to Singer's involvement in the sale of drugs. In *United States v. Pratter*, 465 F.2d 227, 231 (7th Cir.1972), a case upon which Singer relies, there was no suggestion the defendant posed any threat to the officers executing the search. Thus, the presence of a gun distinguishes Singer's case from *Pratter*. Furthermore, it is a reasonable belief that a person in possession of both firearms and large quantities

---

7. Although the tip was anonymous, the police had reason to believe it was reliable. The same complaint stated that Singer was involved in the sale of drugs; this information was later confirmed by the results of the garbage searches and the controlled buy. This corroboration, in our opinion, also suggests that the informant's tip concerning Singer's involvement with firearms was reliable.

of drugs poses a threat to the safety of police officers attempting to seize the drugs. Indeed, the courts have recognized that a suspect's propensity for violence can be inferred from the quantity of drugs involved. *See U.S. v. Bonner,* 874 F.2d 822, 824–25 (D.C.Cir.1989) ("common sense and bitter experience ... suggest [that] dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia); *United States v. Kane,* 637 F.2d 974, 980 (3rd Cir.1981) (reasonable to deduce that weapons are necessary to protect large quantities of drugs); *cf. United States v. Buchanan,* 910 F.2d 1571, 1573 (7th Cir.1990) (recognizing that guns are tools of the drug trade); *United States v. Alvarez,* 860 F.2d 801, 829 (7th Cir.1988) (same), *cert. denied,* 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989). With these considerations in mind, we believe the gun reputedly in Singer's possession posed a quantifiable risk to the safety of the officers executing the warrant; therefore, this exigent circumstance permitted the police to enter Singer's home without first knocking and announcing their presence.[8]

To counter this conclusion, Singer argues that the police officers' belief that he possessed a firearm was insufficient to justify a no-knock entry because the information the police relied upon (the anonymous tip) was stale. True, the CAP report pre-dated the seizure by approximately six months. But firearms, unlike drugs, are durable goods useful to their owners for long periods of time. Moreover, Singer's position ignores the federal judiciary's recognition that firearms are an integral part of the drug trade. *See Buchanan,* 910 F.2d at 1573; *Kane,* 637 F.2d at 980. Although six months is an extended period of time, we do not believe that it is so long that it cannot be used to establish special circumstances justifying a no-knock entry.

Finally, Singer maintains that the officers' execution of the warrant was unconstitutional because the police officers were aware of facts suggesting that no exigent circumstances existed to justify their unannounced entry. To support this argument, he makes much of what the officers did not encounter when they arrived at his home to conduct the search. Among other things, he points out that the officers did not observe any guards or lookouts; they saw no guard dogs; Singer's house appeared to be an average middle-class home; the doors and windows of his home were not barricaded. Singer's argument, however, is based on a false premise. The police did not represent to the Wisconsin court that Singer's home was heavily guarded or barricaded; they sought no-knock authorization based solely on concerns for the officers' safety and the need to prevent the destruction of evidence. As our previous discussion concluded, the officers' no-knock entry was permissible because Singer's possession of firearms posed a threat to the safety of the officers. If, during the intervening period between the warrant's issuance and execution, the police received reliable information that Singer no longer possessed any firearms, then they would have been required to reevaluate their plan to forcibly enter Singer's home without first knocking and announcing. But that did not happen here and Singer's argument therefore fails.

---

**8.** Although Wisconsin law is irrelevant to our decision, we think it worth noting that recent Wisconsin appellate court opinions interpreting *State v. Cleveland,* 118 Wis.2d 615, 348 N.W.2d 512 (1984), have concluded that the type of information present in Singer's case—possession of a firearm—is sufficient to support the issuance of a no-knock warrant. *See, e.g., Wisconsin v. Hanson,* 163 Wis.2d 420, 471 N.W.2d 301 (App.1991); *State v. Watkinson,* 161 Wis.2d 750, 468 N.W.2d 763, 766 (App.1991) (drug dealer's possession of gun in his residence was particular grounds to support "reasonable belief that announcement would endanger the safety of the police or others"). Moreover, reasoning that "requiring law enforcement officers to first know that the suspect has a 'propensity to use the gun in resistance' before permitting a 'no knock' entry" would put police officers executing search warrants at undue risk, the court in *Watkinson* held that a defendant's possession of a firearm, by itself, is sufficient to support the issuance of a no-knock warrant. *Watkinson,* 468 N.W.2d at 766 (citations omitted). We therefore believe that a Wisconsin court assessing the legality of the issuance of a no-knock warrant for Singer's home would conclude that it had been properly issued.

Because of our decision in this case, we need not address whether *Leon*'s good faith exception to the exclusionary rule applies to the facts of this case.

### III.

The issuance of the warrant for the search of Singer's home was supported by probable cause; moreover, the no-knock entry into Singer's residence was justified by exigent circumstances. Because the search did not violate federal constitutional or statutory standards, the evidence seized and incriminating statements obtained pursuant to the search should not have been suppressed. For the foregoing reasons, the case is REVERSED and REMANDED to the district court for further proceedings consistent with this opinion.